```
 1                  UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
 2        BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                             ---o0o---
 3

 4     UNITED STATES OF AMERICA,      :
                                      :  No. 2:13-CR-19-RCJ-GWF
 5                 Plaintiff,         :  No. 2:13-CR-54-RCJ-CWH
                                      :
 6          -vs-                      :  December 11, 2013
                                      :
 7     JOSHUA CROFT,                  :  Las Vegas, Nevada
                                      :
 8                 Defendant.         :
       _____:
 9


10


11                  TRANSCRIPT OF CHANGE OF PLEA


12


13     APPEARANCES:

14     FOR THE PLAINTIFF:        CRISTINA D. SILVA and
                                 PHILLIP N. SMITH, JR.
15                               Assistant United States Attorneys
                                 Las Vegas, Nevada
16


17


18     FOR THE DEFENDANT:        GABRIEL L. GRASSO
                                 Attorney at Law
19                               Las Vegas, Nevada


20


21


22     Reported by:             Margaret E. Griener, CCR #3, RDR
                                Official Reporter
23                              400 South Virginia Street
                                Reno, Nevada 89501
24                              (775)329-9980


25
```

2

1      LAS VEGAS, NEVADA, WEDNESDAY, DECEMBER 11, 2013, 9:12 A.M.

2                            ---o0o---

3

4            THE COURT:  Good morning.  This is in United

5    States versus Joshua Croft.  Appearances, please.

6            MR. SMITH:  Good morning, your Honor.  Phillip

7    Smith appearing for Cristina Silva on behalf of the United

8    States.

9            MR. GRASSO:  Good morning, your Honor.  Gabriel

10   Grasso on behalf of Mr. Croft.  He's present in custody.

11           THE COURT:  Thank you.

12       This was for the purpose of change of plea.  Are you

13   still going forward with your change of plea, Mr. Croft?

14           THE DEFENDANT:  The plea -- the plea that we

15   agreed on -- we've had negotiations.  I talked to this coward

16   two weeks ago.  We agreed, him, the DA and me, we agreed on a

17   specific deal.

18       This -- this dude right here was supposed to come

19   down here and show me --

20           THE COURT:  Speak with respect, sir.

21           THE DEFENDANT:  This fucking faggot was supposed

22   to come down here --

23           THE COURT:  Sir, you're in contempt.  Speak with

24   respect or stop speaking.

25           THE DEFENDANT:  Your Honor, the thing is this

```
 1    here -- I'm not stupid, I know what's going on.  I know

 2    that -- this has been a problem like this since the

 3    beginning --

 4              THE COURT:  Sir, you call him by his name.

 5              THE DEFENDANT:  It's been a problem since the

 6    beginning, your Honor.  I meant no disrespect to you, but I

 7    can't say the same thing for the attorney.

 8         Me and him have been having issues -- this is my

 9    life I'm fighting for.  I don't have no problem signing the

10    deal, neither do I have a problem going to trial, but I'm not

11    going to do none of that with him.

12         You don't tell me that we all agree on a deal, but

13    when you come see me it's a different deal.  That's not what

14    we agreed on.  We agreed -- last time I talked to you --

15              THE COURT:  Sir, my question was, the agreement

16    that was handed to you, are you going to sign it or not?

17              THE DEFENDANT:  It's not the same -- it's not

18    the same agreement, your Honor.

19              THE COURT:  Okay.  So the one that was handed to

20    you this last week, two weeks ago, is not the same

21    agreement --

22              THE DEFENDANT:  No.

23              THE COURT:  -- and you're not willing to sign

24    it.

25              THE DEFENDANT:  No, no, it's not the same one.
```

1    We changed it.

2                    THE COURT:  All right.

3                    THE DEFENDANT:  We all changed our deal.

4                    THE COURT:  Thank you, sir.

5                    THE DEFENDANT:  Last time I spoke to you the

6    deal was different.  You said for us to renegotiate our deal.

7    We did that.  It's not the same deal that was offered to me

8    recently.

9                    THE COURT:  Thank you, sir.

10                   THE DEFENDANT:  Two weeks ago it was a different

11   deal.  This deal is something different.

12                   THE COURT:  Thank you.  That's all.  Please be

13   seated.

14           Is there any other deal offer?  I don't want to get

15   involved in it, of course, but is there any deal on the table?

16                   MR. GRASSO:  Your Honor, I spoke to Cristina

17   Silva yesterday afternoon, and according to her indications to

18   me, there is no longer a deal on the table.

19                   THE COURT:  Okay.  All right.  Let's see, the

20   must be tried date for this case was what?

21                   THE DEFENDANT:  Your Honor, I have a question.

22                   THE COURT:  Hold on just a minute.

23                   THE CLERK:  December 11th, 2013, today.

24                   THE COURT:  All right.  And I had continued

25   this -- let's see.  Trial was scheduled for this week, right?

1           MS. SMITH:  December --

2           THE CLERK:  Correct, tomorrow.

3           THE COURT:  Tomorrow.  I had continued that and

4   taken it off calendar because it was represented to me that

5   the defendant was willing to enter into a change of plea.  So

6   it is off calendar at this point, and I have scheduled other

7   trial matters, including hearings and meetings, this week to

8   begin.  So I cannot hold the trial this week.

9           So as far as I'm concerned, the continuance that I'm

10  going to have to give is at the behest, or at the cause of the

11  defendant personally who is now no longer going forward with a

12  plea deal.  Consequently, I will -- you do have to go to

13  trial, Mr. Croft.

14          THE DEFENDANT:  Can I --

15          THE COURT:  Just a minute.

16          THE DEFENDANT:  I got a question.

17          THE COURT:  Just a minute.

18          You do have to go forward with trial, and I'll ask

19  Madam Clerk to schedule us the nearest trial date, and, again,

20  the cause of it is necessitated by Mr. Croft's refusal to

21  enter into a plea.

22          Just a minute.

23          Trial dates, please.

24          THE CLERK:  Your Honor, trial date is

25  January 13, 2014, at 9:00 a.m.

6

```
 1                    THE COURT:  At 9:00 a.m.  And I understand
 2     that's second on a trial stack with another case.
 3                    THE CLERK:  That's correct.
 4                    THE COURT:  And is that other case a criminal
 5     case?
 6                    THE CLERK:  That is correct, your Honor.
 7                    THE COURT:  So this can't bump that one.  So you
 8     will be on the second stack for that case at that time.
 9              If per chance that criminal case goes forward, then
10     what is our next available time that we will be bumping -- of
11     course, I'm not bumping you at this point, I'm just saying you
12     are set 9:00 a.m. January 13, but you will be trailed to what
13     week if that first case goes forward?
14                    THE CLERK:  The following week we have a civil
15     matter jury trial set so we're looking at the beginning of
16     February.
17                    THE COURT:  Which would be?
18                    THE CLERK:  February 3rd, 2014, at 9:00 a.m.
19                    THE COURT:  Okay.  Very good.
20              All right.  Now your question, sir.
21                    THE DEFENDANT:  See, the thing is, this is what
22     I'm saying.  Today we came here to sign a deal.  This is a
23     deal that I have not seen yet.  I never seen it, I was not
24     trying to sign a deal, I said I have not seen this deal.  The
25     deal that we discussed, this is not the deal that I've seen.
```

7

1              I didn't come here to go to trial, I came here to

2     sign my plea.  I have not gotten this deal yet.

3              This is what I'm saying, your Honor.  I'm not

4     pressing the issue on trial, I'm pressing the issue on the

5     plea that they offered me.  I haven't seen it yet.

6                        THE COURT:  Thank you, sir.

7                        THE DEFENDANT:  This is what I said two weeks

8     ago when we came to court.

9                        THE COURT:  Do you have anything else?  How much

10    more are you going to talk, sir?

11                       THE DEFENDANT:  Well, I just want to --

12                       THE COURT:  The bottom line is I took this off

13    based upon the representation --

14                       THE DEFENDANT:  Going to sign --

15                       THE COURT:  -- that you were agreeing to a deal.

16                       THE DEFENDANT:  Exactly.

17                       THE COURT:  I ordered counsel to fax the deal to

18    you.

19                       THE DEFENDANT:  I just seen him yesterday.

20    Today he said I'm supposed to sign my deal.

21                       THE COURT:  Counsel, did you fax the deal to

22    him?

23                       MR. GRASSO:  We didn't fax it, Judge, we mailed

24    it to him.

25                       THE DEFENDANT:  I haven't --

1          THE COURT:  When did you mail it to him?

2          MR. GRASSO:  Once Cristina Silva sent me the

3   revised -- I found some typos and things like that in the

4   deal, and it must have been sometime last week.  It was after

5   we had -- this all happened during Thanksgiving week, our

6   conversation on the phone where he accepted the deal.

7          When I got back into town after Thanksgiving, it

8   was --

9          THE COURT:  Counsel, I told you that you were to

10  go to the prison and get his signature.  In lieu of that --

11  that was -- don't raise your hand, sir.  This is your fault

12  primarily.  It's your fault primarily.

13         Yeah, well, raise your hand.

14         THE DEFENDANT:  Can I explain --

15         THE COURT:  You're going to trial, sir.  That's

16  it.  There's no more deal on the table.  You're going to

17  trial.  The only thing I'm dealing with now is whether counsel

18  followed my order.

19         This was Thanksgiving, it was Wednesday before

20  Thanksgiving.  You told me that you were already out of town.

21         MR. GRASSO:  Right.

22         THE COURT:  I told you you were to go to the

23  prison --

24         MR. GRASSO:  I did.

25         THE COURT:  -- to get his signature.

1              You did.  On Wednesday?

2                   MR. GRASSO:  No, no, not on Wednesday.

3                   THE COURT:  You told me that in lieu of going

4     Wednesday, you would fax the agreement to him on Wednesday,

5     and you would have your associate there at the prison to have

6     him agree to it, at least orally if not in writing.  Did that

7     happen, sir?

8                   MR. GRASSO:  Your Honor, this is how it

9     happened.  This is what happened.

10             This is -- we're talking Thanksgiving week.  I think

11    we spoke on a Tuesday.  The Court called me on Tuesday, or I

12    called the Court.  That was the Tuesday of Thanksgiving week;

13    is that correct?  I don't remember.

14                  THE COURT:  Probably.

15                  MR. GRASSO:  But I spoke to the Court, I spoke

16    to him, this whole thing was done, and when I was speaking to

17    him, the deal had been faxed over to him.

18             So the fax did occur that day.  He had a deal in his

19    hand.  He wasn't just talking -- he had the deal in his hand

20    because we were going back and forth --

21                  THE COURT:  Was it the deal you thought orally

22    he had agreed to?

23                  MR. GRASSO:  No -- yes, and he had the deal --

24    he's had numerous copies of the deal because this deal has

25    changed a lot, but he had the deal in his hand.

1          Then what happened was -- it wasn't a question of --

2    if the Court recalls, I said I would have to send my

3    associate, and the Court said, well, as long as we have an

4    oral representation --

5              THE COURT:  I said as long as we have an oral

6    representation with the document hot in his hand --

7              MR. GRASSO:  Right.

8              THE COURT:  -- that he was going to enter into

9    it, I would allow us to continue.

10              MR. GRASSO:  And we had -- we had that -- that's

11   what happened.  He gave me -- we came back and forth, back and

12   forth, and I finally called the Court and talked to your JA.

13   This is all happening in the week before Thanksgiving, the

14   week of Thanksgiving.

15              THE COURT:  I told you by 5:00 p.m. that day.

16              MR. GRASSO:  That happened; that happened.

17              THE COURT:  And you called my JA and said he's

18   agreed.

19              MR. GRASSO:  He's agreed.

20          And then -- and then I went to see him --

21              THE DEFENDANT:  Yesterday.

22              MR. GRASSO:  No, no, no, no, no.

23          After Thanksgiving I went to see him at the jail to

24   go over some discovery at the prison.  That was the week after

25   Thanksgiving.

1                    THE DEFENDANT:  Last week.

2                    MR. GRASSO:  Yeah, last week.

3                    THE COURT:  Quiet, sir.

4                    MR. GRASSO:  I went to see -- you know, it's

5    hard for me to get out to Pahrump, Judge.  I get out there a

6    regular time, but it's like I have to basically wipe out

7    three-quarters of a day to get out to Pahrump.

8            And so I went to see him last week to talk about

9    everything and to talk about the discovery.  If you recall,

10   the Court -- to talk about everything.

11           And then I went to see hum again yesterday to make

12   sure everything was hunky-dory.

13                   THE DEFENDANT:  Exactly.

14                   THE COURT:  Sir, be quiet.

15                   MR. GRASSO:  So I've been out there twice.

16   Since the Court has ordered me out there, I've been out there

17   twice.

18           And yesterday I went out to see him.  I don't go out

19   to see any of my other clients, okay.  I just went out to see

20   him, and spent an hour and a half with him in the room going

21   over this deal.

22                   THE COURT:  I don't want to get into the

23   contents of the plea agreement.  I'm prohibited from doing

24   that.  So I'm going to ask you just a very simple question.

25   Did you get his agreement or not --

1          MR. GRASSO:  Yes.

2          THE COURT:  -- through your associate, or you --

3     let me finish my question.

4          THE DEFENDANT:  I didn't say anything.

5          THE COURT:  Did you get his agreement, or not,

6     through your associate, or through yourself, to the faxed

7     agreement on the day of our telephone conversation?

8          MR. GRASSO:  Yes.  Yes, your Honor.

9           Here's what happened.  My associate -- I mentioned

10    to him during the phone call --

11          THE COURT:  I just want a yes or no, sir.

12          MR. GRASSO:  Yes.

13          THE COURT:  I don't want to know here's what

14    happened.

15          MR. GRASSO:  Yes.

16          THE COURT:  Did you get his consent, yes or no?

17          MR. GRASSO:  On that Tuesday, yes.  It was

18    Thanksgiving week.

19          THE COURT:  It was oral.

20          MR. GRASSO:  Oral consent.

21          THE COURT:  And did it happen after the

22    agreement at issue had been sent to him?

23          MR. GRASSO:  Yes.

24          THE COURT:  But now he will not sign it.

25          THE DEFENDANT:  Yeah, I wanted to sign, your

Honor.

MR. GRASSO: What occurred was -- and let me -- would the Court mind if I went over the agreement --

THE COURT: No, you can't. You know, under the rules, I can't look into the agreement.

MR. GRASSO: Well, the Court has a copy of it.

THE COURT: I'm not going to -- I haven't looked at it. I don't get that until I put him under oath and I start asking him questions. I can't look at the content of the agreement until he's ready to enter into a plea, until you've told me he's signed it.

MR. GRASSO: Here's what occurred. The agreement that we agreed to on the phone on the Tuesday --

THE COURT: He had the agreement in his hand.

THE DEFENDANT: No, no, this is not --

THE COURT: He had the agreement in his hand, did he not, counsel?

MR. GRASSO: He had the agreement, okay?

THE DEFENDANT: Judge --

THE COURT: Okay.

MR. GRASSO: The agreement that we agreed to on the phone on Tuesday, and the agreement -- then after everything was all -- the dust settled, he said on Tuesday, yes, I will take it.

And I called your office before 5:00, and

1    everything -- and your office put off the trial, and

2    everything was the done according to your instructions.

3           That agreement was -- he's saying it's different

4    than the agreement I came to him with the second time which

5    was --

6           THE COURT:  I don't even understand what you're

7    saying.  You're using a foreign language as far as I can tell.

8           MR. GRASSO:  Here's what's happening --

9           THE COURT:  And so is your client.

10          MR. GRASSO:  Well, here's what's happening.

11          On Tuesday of Thanksgiving week when I had

12   conversations with your Honor, when I had conversations

13   with --

14          THE COURT:  So what you're telling me, trying to

15   interpret your foreign language, is you did fax him the

16   agreement at issue, but after that the parties agreed to a

17   different agreement.

18          THE DEFENDANT:  Exactly.

19          MR. GRASSO:  No, no, that's not true.  That's

20   not correct.

21          What happened was that inside this agreement --

22   because there is a -- without getting into much detail in the

23   agreement, there is a section in the agreement which deals

24   with grouping of charges because there's two cases grouped in

25   one agreement.

1            The grouping of charges section changed somewhat in

2   that there was a mis -- this is just the government's

3   calculation.  This does not mean that this -- this is not like

4   the base offense level and the plus this and plus that --

5            THE COURT:  Nor is the agreement a binding

6   agreement, right?  It doesn't bind me.

7            MR. GRASSO:  No, it doesn't bind you.

8            And so in that section, from -- because those

9   grouping calculations are somewhat complex, it had -- when we

10  were talking during Thanksgiving week, it had one calculation

11  that the government came up with, and then later on in our

12  conversation together after Thanksgiving, and our conversation

13  of trying to get this thing going or just talking --

14           THE COURT:  You realized it had to be changed.

15           MR. GRASSO:  We realized that it had to be

16  changed by one point.

17           THE COURT:  Was the agreement that was faxed,

18  was it a binding agreement on the Court?

19           MR. GRASSO:  No.

20           THE COURT:  Obviously it had bound you.

21           MR. GRASSO:  It was.

22           THE COURT:  But did it bind the Court?

23           MR. GRASSO:  Not at all.

24           THE COURT:  So we all understand that what that

25  agreement was, it did not bind the Court.  It's my probation

1  department, neither the government nor you, calculating the

2  range, correct?

3                    MR. GRASSO:  Exactly.  And I explained that to

4  him yesterday.

5                    THE COURT:  So it was faxed to him.  You got his

6  agreement to it --

7                    MR. GRASSO:  Yes.

8                    THE COURT:  -- before 5:00 p.m. that day.

9                    MR. GRASSO:  Yes.

10                    THE COURT:  And then you and the government

11  agreed that the writing of it, including the calculation, had

12  to be changed.

13                    THE DEFENDANT:  Exactly.

14                    THE COURT:  Sir, that's not on the record.  I

15  told you to keep your mouth closed.  Do you understand what

16  I'm saying?  Do you understand my words, sir?

17             Yeah?  You do.  You're nodding your head yes.  Good.

18                    MS. SILVA:  Good morning, your Honor.  I

19  certainly apologize for coming in late.  I was before Judge

20  Gordon in another hearing.  I do apologize.

21             Mr. Grasso is correct, the correction was as a

22  result of a math error on my part, I added it incorrectly.

23  And Mr. Grasso caught the error and said you added this wrong

24  and asked me to change that one number.

25             So that is the only -- the only thing that changed

1   between the conversation the week before Thanksgiving --

2           THE COURT:  Did it increase the calculation?

3           MS. SILVA:  For one section, because the

4   way we --

5           THE COURT:  So it increased the calculation.

6           MS. SILVA:  By one point.

7           THE COURT:  Very good.

8           MS. SILVA:  Yes.

9           THE COURT:  But you sent him an agreement.

10          MS. SILVA:  Yes.  And the substance and what he

11  was pleading to, what we agreed to --

12          THE COURT:  So if he agreed to it, you're bound

13  to it.

14          MS. SILVA:  And we could change it back, your

15  Honor, because ultimately --

16          THE COURT:  You bet.  You will change it back

17  because you're bound to it.

18          MS. SILVA:  Ultimately -- well, it hasn't been

19  signed yet, but that being said, that's no problem because

20  you're right, Probation is going to come back with a

21  calculation anyway.

22          THE COURT:  That's correct.  So let's have it

23  revised to exactly what was faxed to him.

24          MS. SILVA:  No problem, your Honor.

25          THE COURT:  Do you understand what I'm

```
 1   suggesting now?
 2            Now, you can speak, sir.  Do you understand what I'm
 3   suggesting?
 4            The agreement that will be given to you for
 5   signature is the exact agreement that you received by fax at
 6   the prison on that Tuesday or Wednesday before Thanksgiving.
 7   Do you understand?
 8            THE DEFENDANT:  I haven't received a copy, but I
 9   understand.  I still want to sign it, your Honor, even though
10   I haven't received a copy.  I understand.
11            MR. GRASSO:  He threw the copy in my face
12   yesterday, Judge, that's why he hasn't received a copy, I
13   mean, the second copy.
14            THE COURT:  Are you talking about the mailed
15   one --
16            THE DEFENDANT:  The one --
17            THE COURT:  -- with the change?
18            MR. GRASSO:  No, no, I'm talking about the one I
19   sent him.  I brought him -- I brought copies of it yesterday
20   when I went to see him just to make sure we all had the same
21   agreement, and he didn't want to accept it.
22            The other copy, the copy the Court is talking about
23   was faxed --
24            THE COURT:  But you affirm to me --
25            MR. GRASSO:  -- was faxed to him.
```

19

```
1                    THE COURT:  -- as an officer of the court, that
2       it was faxed to him that very day.
3                    MR. GRASSO:  That was the first thing that
4       happened, because, if you recall, your Honor, I was out
5       town --
6                    THE COURT:  I didn't ask you for all the
7       explanation.
8                    MR. GRASSO:  -- I couldn't go there.
9                    THE COURT:  I asked was it in fact faxed to him.
10                   MR. GRASSO:  Yes, it was faxed to him.
11                   THE COURT:  Sir, counsel tells me as an officer
12      of the court it was faxed to you.
13           Was it Tuesday or Wednesday that we were talking?
14                   MR. GRASSO:  I think it was Tuesday, your Honor.
15                   THE COURT:  Tuesday.  And by five o'clock you
16      said you had his agreement.
17           Are you telling me now, sir, you didn't get it?
18                   THE DEFENDANT:  No, no.  I did -- I did give him
19      a verbal agreement, I'm not turning from there.  I have not
20      seen that -- I didn't receive the fax, rather.
21                   THE COURT:  I don't know how you disclaim it,
22      sir.  He tells me it was faxed to you on that day, and I'm
23      assuming that he has a faxed document somewhere to prove it.
24                   THE DEFENDANT:  Your Honor, it's been
25      complications at the prison.  Just like he says he faxed --
```

1          THE COURT:  Sure, there's always complications

2    at the prison.

3          THE DEFENDANT:  Exactly --

4          THE COURT:  I believe that like I believe the

5    sun is going to go down in two hours.

6          THE DEFENDANT:  But there's things that he faxed

7    me that he knows I didn't get, so it's not him -- I'm not

8    saying it's him, I'm saying it's the prison.

9          THE COURT:  No, it isn't, it's you.

10         So are you willing -- do you have that original fax

11   that was sent to him?

12         MS. SILVA:  Your Honor, I have it in e-mail

13   format so Mr. Grasso can print that out and --

14         THE COURT:  Hand it to him now, and I'm going to

15   give you five minutes, sir, to tell me whether you're going to

16   sign it or not.  You understand?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Otherwise we're going to trial.  The

19   deal is off the table.  If you're willing to take what was

20   faxed to you and sign it, I'm going to order them to leave the

21   offer on the table.  Do you understand?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Hand it to him now.

24         MS. SILVA:  Your Honor, I apologize, I have the

25   revised copy.  I will have to run upstairs and print it out,

1    it will take me a few moments.

2                    THE COURT:  No, you will hand him the revised

3    copy with further revision back to the original, and then you

4    may be excused while he has five minutes to decide whether

5    he's going to sign it as originally faxed to him.

6                    MS. SILVA:  Yes, your Honor.

7                    THE COURT:  Also, for the record, we had a jury

8    summonsed for today, which summons we notified them that they

9    were not obligated to comply with because it was represented

10   to me that we had a guilty plea.

11           Remind me in the future, Madam Clerk, we will never

12   take a trial off calendar unless I have a signed agreement in

13   my face.

14                    THE CLERK:  Yes, your Honor.

15                    THE COURT:  Now, you have five minutes, sir,

16   unless you know --

17                    THE DEFENDANT:  I'm waiting for them to give it

18   to me.

19                    THE COURT:  -- unless you know you're ready to

20   sign it already.  For the record, it's been handed to him.

21   Five minutes.

22                    (A recess was taken.)

23                    THE COURT:  All right.  Let's see, you've given

24   him a copy of the plea that was faxed to him, and you've given

25   me a copy of it as well, correct?

1            THE CLERK:  That's the original, your Honor.

2            THE COURT:  That's the original.

3       And have you signed it, and are you willing to sign

4  it, Mr. Croft?

5            THE DEFENDANT:  I've signed it already.

6            THE COURT:  You have.  So you're willing to go

7  forward on this basis.

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Okay.  If you'll bring your client

10  up to the podium, please.

11       Thank you, Mr. Croft.  In order to take a valid

12  plea, I have to ask you questions under oath.  If you would

13  raise your right hand and be sworn, please.

14                 (The defendant was sworn.)

15            THE COURT:  Thank you, sir.  You understand

16  you're under oath, you must answer truthfully.

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  The defendant has been furnished

19  with a copy of all the charges, counsel?

20            MR. GRASSO:  He has, your Honor.

21            THE COURT:  Do you waive a reading at this time?

22            MR. GRASSO:  We do, your Honor.

23            THE COURT:  And do you understand the charges

24  against you, sir?

25            THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  And just for the record, I

2    apologize for asking, but do you fully read, write, and

3    understand the English language?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And how does he intend to plead,

6    please?

7          MR. GRASSO:  Guilty, your Honor.

8          THE COURT:  There are how many counts?

9          MR. GRASSO:  There are three counts, one is an

10   enhancement.  There's a fourth, but it's an enhancement, it's

11   a 924(c).

12         THE COURT:  Okay.  So it's a guilty plea to

13   Counts 1, 2 and 11 in case number 2:13-CR-19, and Count 1 in

14   case 2:13-CR-54; is that correct?

15         MR. GRASSO:  That's correct, your Honor.

16         THE COURT:  Okay.  Now, before accepting the

17   plea, Mr. Croft, I have to ask you these questions.  The main

18   purpose is to make sure you understand you have a right to a

19   trial instead of proceeding with a guilty plea.

20         First a little bit about yourself.  How old are you?

21         THE DEFENDANT:  Twenty-four.

22         THE COURT:  And how far did you go in school?

23         THE DEFENDANT:  How far?  I graduated, or, you

24   mean, like what's the last grade that I was --

25         THE COURT:  Yeah.

1           THE DEFENDANT:  College, I took college.

2           THE COURT:  And did you graduate from college?

3           THE DEFENDANT:  No, sir.

4           THE COURT:  But you took a year or two?

5           THE DEFENDANT:  Uh-huh, I took a year.

6           THE COURT:  Okay.  In the last 24 hours, have

7  you taken any drugs, medicine, pills of any kind, or drunk any

8  alcoholic beverages?

9           THE DEFENDANT:  No, sir.

10           THE COURT:  No.  And have you ever been treated

11  for any mental illness or addiction to narcotic drugs of any

12  kind?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  And did treatment -- was it for

15  mental illness?

16           THE DEFENDANT:  No, it was for -- I was high

17  when I did my first case, and they sentenced me to -- once I

18  got out of prison, I had to take drug classes.

19           THE COURT:  Okay.  And you're not taking any

20  present medication --

21           THE DEFENDANT:  No, sir.

22           THE COURT:  -- to help you with that treatment.

23           THE DEFENDANT:  No, sir.

24           THE COURT:  Okay.  And do you in fact understand

25  what is happening here today?

1              THE DEFENDANT:  I'm pleading guilty.

2              THE COURT:  Okay.  And, counsel, do either of

3    you have any doubt as to defendant's competence to plead?

4              MS. SILVA:  No, your Honor.

5              MR. GRASSO:  No, your Honor.

6              THE COURT:  Okay.  Based upon those

7    representations and my own observations, I find the defendant

8    competent to plead.

9              Now, here for purposes of this hearing, sir,

10   Mr. Grasso represents you, has been appointed to represent

11   you.  Have you had sufficient opportunity to discuss your case

12   with him and this guilty plea, and are you satisfied to have

13   him represent you here today?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Under our constitution and laws, you

16   understand that you are entitled to a jury trial instead of a

17   guilty plea.  Do you understand that?  Yes?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And at such a trial all jurors, 12

20   of them, would have to find you guilty unanimously before you

21   could be convicted.  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And the government at such a trial

24   has to carry the burden of proof.  In other words, there's a

25   presumption of innocence.  You don't have to prove your

1    innocence, the government has to carry their burden, beyond a

2    reasonable doubt and by competent evidence, that you are in

3    fact guilty.  Do you understand that burden?

4               THE DEFENDANT:  Yes.

5               THE COURT:  And you understand that witnesses

6    for the government, in fact, have to come here in Court on

7    this stand and in your presence to testify.  Your attorney

8    could cross-examine them; you understand that.

9               THE DEFENDANT:  Yes.

10              THE COURT:  And also present witnesses and

11    evidence on your behalf; you understand that.

12              THE DEFENDANT:  Yes.

13              THE COURT:  You also understand that you have a

14    right to remain silent.  That means you can testify if you

15    want to, but you also have the right to simply remain silent

16    during such a trial; you understand that.

17              THE DEFENDANT:  Yes.

18              THE COURT:  If I accept your guilty plea today,

19    do you understand that you will waive these rights that we

20    have just discussed?

21              THE DEFENDANT:  Yes.

22              THE COURT:  For example, you will be admitting

23    that you committed the offenses charged in these particular

24    counts of the indictment; you understand that.

25              THE DEFENDANT:  Yes.

1          THE COURT:  And also you will be waiving your

2    right to remain silent because in a moment I will ask you what

3    you did, and you'll be telling me under oath; you understand

4    that.

5          THE DEFENDANT:  Yes.

6          THE COURT:  Are you willing today to give up

7    your right to remain silent in order for me to accept your

8    guilty plea?

9          THE DEFENDANT:  Yes.

10          THE COURT:  You've read a copy of these two

11   indictments against you, sir?

12          THE DEFENDANT:  Are you talking about the

13   original indictments?

14          THE COURT:  Yeah.

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And you've discussed these with your

17   attorney.

18          THE DEFENDANT:  Yes.

19          THE COURT:  He's explained them to you.

20          THE DEFENDANT:  Yes.

21          THE COURT:  I'm also required to explain to you

22   especially the elements of each of these charges upon which,

23   if you chose to go to trial, a jury would have to find you

24   guilty.

25          You've been charged in Count 1 of the indictment

1   with a violation of Title 18 U.S. Code section 1951.  This

2   section makes it a crime for anyone to be guilty of conspiracy

3   to interfere with commerce by robbery.

4            The elements of this offense are twofold.  The

5   government would have to prove both of these by competent

6   evidence and beyond a reasonable doubt at trial.

7            First, beginning on a date unknown, and continuing

8   through on or about December 28, 2012, Defendant Joshua Croft,

9   that's you, conspired with Chilicia Jamerson and others, known

10  and unknown, to interfere with commerce by robbery as charged

11  in the indictment.

12           Second, Defendant Croft became a member of the

13  conspiracy knowing of its object and intending to accomplish

14  it.

15           In Count 2 of that same indictment, you've been

16  charged with a violation of Title 18 US Code section 924(c)

17  (1)(A)(ii)and (iii) and (2).  These sections make it a crime

18  for anyone to brandish a firearm during a crime of violence.

19  Here's the elements of that offense.

20           First, Defendant Croft committed the crime of

21  violence charged in the indictment; second, Defendant Croft,

22  directly or indirectly, carried or used and brandished a

23  firearm during and in relation to the crime of violence

24  charged in the indictment.

25           A defendant can be convicted of a violation of

1    Section 924(c) even if the defendant did not personally carry

2    or use the firearm during a crime of violence if the

3    defendant, and only if the defendant, knew that another

4    participant or coconspirator in the crime of violence was

5    using or carrying a firearm in relation to the crime, or

6    carrying or use of a firearm by a participant during the

7    robbery was reasonably foreseeable.

8              Now, you've been charged in Counts 1 and 2 -- 1 and

9    11 of 13-CR-19 as follows, with violations of Title 18 US Code

10   1951(a) and 2.  These sections make it a crime for anyone to

11   be guilty of interference with commerce by robbery.

12             There are three elements to this offense.

13             First, Defendant Croft induced the victims to part

14   with property by the wrongful use of actual or threatened

15   force, violence, or fear; second, Defendant Croft acted with

16   intent to obtain the property; and, third, commerce from one

17   state to another was affected in some way.

18             Finally, in Count 1 of indictment 2:13-54, you were

19   charged with a violation of Title 18 US Code 1512(b).  This

20   section makes it a crime for anyone to be guilty of tampering

21   with a witness.

22             There are three elements to this offense.  Again,

23   the government would have to prove all three.

24             First, the defendant knowingly used, or attempted to

25   use, physical force or the threat of physical force against

1   the victim; second, the defendant acted with intent to

2   influence, delay, or prevent the testimony of the victim in an

3   official proceeding, or cause or induce to the victim to

4   withhold testimony in or from an official proceeding, or cause

5   or induce the victim to appear or not appear as a witness;

6   third, the defendant knew, or should have known, that the case

7   was pending or was likely to be instituted.

8            Those are the charges and the elements of each of

9   the charges.

10            Do you understand those elements, sir?

11            THE DEFENDANT:  Yes.

12            THE COURT:  You understand that by pleading

13   guilty you will be admitting to me that the government could

14   prove those elements against you at trial.  Do you understand

15   that?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Are you aware of the maximum

18   sentences and fines that can be imposed for these counts?

19            THE DEFENDANT:  No.

20            THE COURT:  For example, are you aware that the

21   maximum possible penalty under case number 2:13-19, Counts 1

22   and 11, conspiracy to interfere with commerce by robbery, and

23   interference of commerce by robbery, is a fine of not more

24   than 250,000, or a term of imprisonment of 20 years, or both?

25   Do you understand that?

1              THE DEFENDANT:  Yes.

2              THE COURT:  The maximum possible penalty under

3   Count 2, brandishing a firearm during and in relation to a

4   crime of violence is a fine of not more than 250,000, or a

5   term of life imprisonment, or both.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Mandatorily, counsel, is this a

8   consecutive sentence?

9              MS. SILVA:  Yes, your Honor.

10             THE COURT:  So the sentence in that count has to

11  be imposed consecutively.  Do you understand that, sir?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Defendant is subject to a mandatory

14  minimum of seven years of imprisonment that must run

15  consecutively to any other sentence; you understand that.

16             THE DEFENDANT:  Yes.

17             THE COURT:  And we're talking about the

18  maximums, not necessarily the ones that will be imposed.

19        The maximum possible penalty under case 2:13-CR-54,

20  Count 1, is tampering with a witness, and that is a fine of

21  not more than 250,000, or a term of imprisonment of up to

22  20 years, or both.  Do you understand those maximums, sir?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And there is a minimum, of course,

25  that is, a consecutive sentence with regard to brandishing a

1   firearm; you understand that.

2        You also understand that a special assessment fee of

3   $100 for each count will be imposed at the time of sentencing.

4        THE DEFENDANT:  Yes.

5        THE COURT:  A little bit more about our

6   sentencing system.

7        Do you understand that in every criminal case such

8   as this where you can be sentenced to more than a year in

9   prison, that in addition the Court may and usually does impose

10  a term of supervised release, a part of the sentence to

11  follow, in this case not to exceed five years; you understand

12  that.

13       THE DEFENDANT:  Yes, sir.

14       THE COURT:  And that while you're on supervised

15  release, you must abide by the conditions specified by the

16  Court.  If you violate those, the judge at that time can send

17  you back for additional prison time.  Do you understand that?

18       THE DEFENDANT:  Yes.

19       THE COURT:  And if it is revoked in that

20  fashion, you can be sentenced to the whole term of supervised

21  release without credit for any time you've already spent in

22  that status; you understand that.

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  And if we combine any term of

25  imprisonment with any time spent because we revoked supervised

1    release, that total time could exceed the original sentence

2    that you receive; you understand that.

3              In other words, if we look at the original term

4    that's imposed by the Court, and if we add to it any time

5    because your supervised release is revoked, that certainly

6    would exceed, be higher than, the original term you got; you

7    understand that.

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Okay.  And you also understand that

10   the Court can order you to make restitution to any victim of

11   this offense.

12             THE DEFENDANT:  Yes.

13             THE COURT:  And that these offenses are felony

14   offenses.

15             THE DEFENDANT:  Yes.

16             THE COURT:  If the Court accepts your plea and

17   you are adjudged guilty of a felony, that could deprive you of

18   valuable civil rights such as the right to serve on a jury,

19   the right to possess any kind of a firearm and the right to

20   vote; you understand that.

21             THE DEFENDANT:  Yes.

22             THE COURT:  Has anyone threatened you or forced

23   you to plead guilty?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  This is a voluntary plea on your

34

1    part.

2              THE DEFENDANT:  Yes.

3              THE COURT:  Nobody has applied pressure from a

4    codefendant or anybody else for you to plead guilty.

5              THE DEFENDANT:  No, sir.

6              THE COURT:  You've read the plea agreement in

7    this case?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And you've discussed it with your

10   attorney --

11             THE DEFENDANT:  Yes.

12             THE COURT:  -- on a number of occasions.  You

13   believe you understand it, sir?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And you signed it.

16             THE DEFENDANT:  Yes.

17             THE COURT:  That's your signature.

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  Counsel, have you conveyed

20   any and all offers of plea or negotiations, written or oral,

21   to your client?

22             MR. GRASSO:  I have, your Honor.

23             THE COURT:  And do you acknowledge the receipt

24   of any and all negotiations and pleas, whether you agreed with

25   them or not, through your attorney from the government?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And you're acting today both on your

3   advice and on your attorney's advice.

4           THE DEFENDANT:  Yes.

5           THE COURT:  Now, last thing before I ask

6   Ms. Silva to tell us the substance of the agreement, I just

7   want you to understand that just like the attorneys, you have

8   an obligation to tell me about any promise that was made to

9   you that caused you to plead guilty.  That's the only way I

10  can determine the fairness of the agreement.

11          Do you understand that obligation, sir?

12          THE DEFENDANT:  Yes.

13          THE COURT:  I'll ask Ms. Silva then to relate

14  the substance of the agreement.

15          MS. SILVA:  Yes, your Honor.

16          Defendant knowingly and voluntarily agrees to plead

17  guilty to the following charges as set forth in the criminal

18  indictment for case number 2:13-CR-19 returned by the grand

19  jury on January 15, 2013:

20          Count 1, conspiracy to interfere with commerce by

21  robbery in violation of Title 18 United States Code section

22  1951;

23          Count 2, brandishing a firearm in furtherance of a

24  crime of violence, a violation of Title 18 United States Code

25  sections 924(c)(1)(A)(ii) and (iii) and(2);

 1              and Count 11, interference with commerce by robbery

 2      in violation of Title 18 United States Code section 1951 and

 3      2.

 4              The defendant also knowingly and voluntarily agrees

 5      to plead guilty to the following charge as set forth in the

 6      indictment for case number 2:13-CR-54 returned by the grand

 7      jury on January 5th, 2013:

 8              Count 1, tampering with a witness, in violation of

 9      Title 18 United States Code section 1512(b).

10              The defendant agrees to the forfeiture of property

11      as set forth in this plea agreement and the forfeiture

12      allegations of the indictment in case number 2:13-CR-19.

13              The United States agrees it will move to dismiss any

14      remaining counts against the defendant at the time of

15      sentencing.

16              The plea agreement includes the waiver of trial

17      rights, elements of the offenses, as well as the facts that

18      support the guilty plea.

19              The defendant acknowledges that the Court must

20      consider the United States Sentencing Guidelines in

21      determining the defendant's sentence, but that the guidelines

22      are advisory, not mandatory, and the Court has discretion to

23      impose any reasonable sentence up to the maximum term of

24      imprisonment determined by statute.

25              The parties have included what we believe will be

1    the offense level calculations, and there is a discussion

2    regarding a reduction of the offense level for acceptance of

3    responsibility.  The defendant will receive either a two- or

4    three-level reduction for acceptance of responsibility unless

5    he forfeits the right to that reduction.

6            The defendant acknowledges the Court may base its

7    sentence in part on the defendant's criminal record or

8    criminal history, and that the Court will determine the

9    defendant's criminal history category under the sentencing

10   guidelines.

11           The Court may consider any counts dismissed under

12   this plea agreement and all other relevant conduct, whether

13   charged or uncharged, in determining the applicable guideline

14   range and whether to depart from that range.

15           And defendant acknowledges that the U.S. Probation

16   Office may calculate his guidelines differently and may rely

17   on additional information it obtains through its

18   investigation, and that the Court will rely on this additional

19   information.  Reliance on such information will not be grounds

20   for the defendant to withdraw his guilty plea.

21           The plea agreement includes a discussion regarding

22   factors under Title 18 U.S. Code section 3553, the fact that

23   parole has been abolished, supervised release, and the $100

24   special assessment fee must be paid per count at the time of

25   sentencing.

1          The United States will seek a sentence within the

2     applicable sentencing guideline range.  The defendant may

3     argue for a sentence at the low end of the applicable

4     sentencing guideline range determined by the Court followed by

5     the 84 months consecutive for his plea in Count 2 in case

6     number 2:13-CR-19 unless the defendant commits any acts that

7     could result in the loss of downward adjustment for acceptance

8     of responsibility.  The defendant acknowledges that this Court

9     does not have to follow that recommendation.

10         The defendant will not request a sentence below the

11    low end of the guideline range as covered in this plea

12    agreement and will not seek a downward adjustment pursuant to

13    Title 18 United States Code section 3553 or guideline

14    4A1.3(b)(1).

15         The plea agreement includes discussion for

16    forfeiture as well as the defendant's acknowledgements and

17    waivers.

18         The defendant is waiving almost all of his appellate

19    rights except for nonwaivable claims of ineffective assistance

20    of counsel and any sentence that is above the applicable

21    guideline range as determined by the Court.

22         The plea agreement also includes removal and

23    deportation consequences.

24              THE COURT:  Thank you.  Counsel, do you agree

25    that's the summary of the agreement?

1          MR. GRASSO:  That is, your Honor.

2          THE COURT:  And is that your understanding,

3    Mr. Croft?

4                    (Discussion held off the record.)

5          MR. GRASSO:  That's my understanding, your

6    Honor.

7          THE COURT:  Is that your understanding,

8    Mr. Croft?

9          MR. GRASSO:  He was hoping that the government

10   would recite the offense levels.

11         THE COURT:  I'm going to recite those.

12       Is this agreement as she's related, the summary of

13   it, correct?

14         THE DEFENDANT:  The charges?

15         THE COURT:  Yeah.

16         THE DEFENDANT:  Not the sentencing, just

17   specifically the charges, right?

18         THE COURT:  Do you disagree with the sentencing

19   guideline calculation?

20         THE DEFENDANT:  No, no, no, no, no, I said just

21   what she explained, the nature of the charges?

22         THE COURT:  Right.

23         THE DEFENDANT:  Okay.  I agree.

24         THE COURT:  Do you disagree with her summary of

25   the plea agreement?

1          THE DEFENDANT:  I agree.  I agree with it.

2          THE COURT:  Did anybody make any other promise

3    to you other than is contained here that caused you to plead

4    guilty?

5          THE DEFENDANT:  It was fixed.

6          THE COURT:  Pardon?

7          THE DEFENDANT:  I said it was fixed, it's fixed

8    now so --

9          THE COURT:  Okay.  Now, you're aware that this

10   is an agreement that binds you and also binds the government,

11   but it does not bind the Court.  I'm the one that still has to

12   set the sentence; you understand that.

13         THE DEFENDANT:  Yes.

14         THE COURT:  So, for example, if my probation

15   department calculates the guideline differently, I'm at

16   liberty to follow my probation department.  Neither your

17   attorney nor the government attorney can argue anything except

18   what's contained here; you understand that.

19         THE DEFENDANT:  Yes.

20         THE COURT:  So, for example, if my probation

21   department calculates a higher level, offense level, your

22   attorney certainly can argue for the offense levels as

23   calculated here in this agreement; you understand that.

24         THE DEFENDANT:  Yes.

25         THE COURT:  And the government cannot oppose

 1    their argument; you understand that.

 2                    THE DEFENDANT:  Yes.

 3                    THE COURT:  But you also understand that I'm the

 4    one that calculates finally the guideline, and I'm the one who

 5    sets the sentence; you understand that.

 6                    THE DEFENDANT:  Yes.

 7                    THE COURT:  And if the government, after

 8    recommending a sentence, if that sentence is different than

 9    any recommended by the government, you will still be bound by

10    your guilty plea; you understand that.

11                    THE DEFENDANT:  Yes.

12                    THE COURT:  A little bit more about the

13    sentencing.  Under our Reform Act of '84, the U.S. Sentencing

14    Commission issues guidelines which the Court is obligated to

15    consult but does not have to hone to, does not have to comply

16    with completely, but I do have to consult them.  They're the

17    basic place where we start the sentencing process.

18                    Have you and your attorney discussed the sentencing

19    guidelines and how they apply to your case?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  And he's answered all of your

22    questions.

23                    THE DEFENDANT:  Yes.

24                    THE COURT:  You understand that we can't

25    determine the guideline for about 90 days, it takes my

1   probation department about 60 to 90 days to determine the

2   guideline.

3          They do an interview of you, they make

4   recommendations, they discuss your background in the

5   presentence report, and then finally we hold a sentencing

6   hearing at which I finally adopt or change the guideline and

7   make a finding; you understand that.

8                  THE DEFENDANT:  So 90 days is the max?

9                  THE COURT:  It's about 90 days.

10                 THE DEFENDANT:  So there's no way that I can get

11  sentenced faster than that basically.

12                 THE COURT:  If my probation department is

13  faster, I certainly give the liberty to your attorney to move

14  up the date.  I'm available.

15                 THE DEFENDANT:  Most definitely.

16                 THE COURT:  Once the guideline has been

17  determined, again, it's not binding on me, and I can set a

18  sentence higher or lower than any established in the

19  guideline; you understand that.

20                 THE DEFENDANT:  Yes.

21                 THE COURT:  You would still be bound by your

22  guilty plea if that happens; you understand that.

23                 THE DEFENDANT:  No, you confused me.

24                 THE COURT:  Pardon?

25                 THE DEFENDANT:  No, you confused me.

1           THE COURT:  If I should go up or down from the

2    guideline -- they're only advisory, they're not mandatory upon

3    me.  The only thing mandatory on me is minimum and/or maximum

4    sentences.  So if I chose to go higher or lower than the

5    guideline, you will still be bound by your guilty plea.  Do

6    you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  You have the right, of course, to

9    appeal any sentence that I impose that's higher than the

10   guideline as I calculate it, but you will be waiving your

11   rights to appeal any sentence within the guideline or below

12   the guideline.  Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Finally, there's a last concept we

15   call relevant conduct.

16          You understand that if the government is agreeing

17   not to prosecute other counts, still any other relevant

18   conduct to the present charges can be discussed in that

19   presentence report and could affect your sentencing including

20   your background or prior criminal convictions; you understand

21   that.

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.  Now, in the plea packet,

24   Mr. Grasso, there's a written summary of facts to support a

25   guilty plea.  Have you read that and reviewed it with the

1    defendant?

2                    MR. GRASSO:  We have, your Honor.

3                    THE COURT:  Is there any reason he can't

4    allocute to those facts, namely, that they're not true?

5                    MR. GRASSO:  No, your Honor.  He -- we're

6    accepting those facts as true.

7                    THE COURT:  Okay.  And, Mr. Croft, you've read

8    that section on facts to support a guilty plea; is that

9    correct?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  It's amended by you and the

12   government in several respects, correct?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  And are you ready to admit that

15   those are true facts?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  I'm going to read it to you briefly

18   and then ask you under oath if these are true facts.

19               On December 28, 2012, at approximately 2:30 a.m. --

20   this pertains to Counts 1, 2 and 11 in 13-19, an armed robbery

21   occurred at the Circle K located at 700 East Naples,

22   Las Vegas, Nevada.

23               The investigation revealed that the female suspect,

24   later identified as codefendant Chilicia Jamerson entered the

25   store carrying a silver and black automatic handgun.  Then a

1   male suspect, later identified as Defendant Joshua Croft,

2   entered the store, ran behind the counter and approached the

3   victim clerk.  Croft had the clerk open two registers and then

4   put money from the registers into a white plastic grocery bag

5   which Croft brought into the store with him.

6           Jamerson and Croft then grabbed cigarettes and gum

7   from around the cash registers.  Croft took the victim clerk's

8   wallet, and forced him into the back office area onto the

9   floor.  Croft and Jamerson fled the store and drove away in a

10  black Chrysler 300 sedan.

11          Approximately $100 was taken from the victim clerk.

12  The suspects wore gloves, concealed their faces with scarves

13  and masks.  The incident was captured on video surveillance.

14          Officers located the black Chrysler 300 a short time

15  later, and, following a brief car chase, the occupants, later

16  identified as codefendants Joshua Croft and Chilicia Jamerson,

17  were arrested.  The victim clerk's wallet and the silver and

18  black firearm were thrown from the vehicle during the car

19  chase, however officers were able to recover these items.

20          The vehicle was later towed and was later searched

21  pursuant to a state search warrant.  During the execution of

22  the search warrant, officers recovered a mask, gloves, white

23  plastic grocery bag, money and packs of cigarettes and gum

24  from inside the vehicle.

25          Jamerson was interviewed by detectives.  Post

1    Miranda she gave a full taped confession.  Jamerson also

2    admitted to assisting Croft with four additional robberies.

3    The additional four robberies that Jamerson confessed to

4    committing with Croft, December 21st, 2012, two robberies,

5    December 22nd, 2012, one robbery, and December 27th, 2012, one

6    robbery.

7            In each of the aforementioned robberies, a lone male

8    suspect ran into convenience stores located in Las Vegas,

9    Nevada, and pointed a silver semiautomatic handgun at the

10   victims while demanding money.  The suspect in each of these

11   robberies wore gloves and concealed his face with a black

12   mask.  However, the defendant was identified as the

13   perpetrator based on *modus operandi*, that he was often seen

14   getting into a Chrysler 300 automobile after committing the

15   robberies and the statements made by codefendant Jamerson.

16           With regard to Count 1 in case 2:13-CR-54, on or

17   about January 16, 2013, Defendant Joshua Croft was at a

18   hearing in the Eighth Judicial Circuit District Court, State

19   of Nevada, in Las Vegas, Nevada.  By the time this hearing was

20   held, Croft was aware that Jamerson was providing

21   incriminating statements to law enforcement agents about

22   Croft's involvement in additional robberies.

23           Also present in the courtroom with Croft was

24   Chilicia Jamerson.  During the hearing in state court,

25   numerous charges that were pending against Croft and Jamerson

1    were dismissed as a result of the federal indictment in this

2    case, 2:13-19.

3           Croft and Jamerson were seated nearby each other in

4    the courtroom as they waited for their cases to be called.

5    During the proceedings Jamerson's attorney observed her become

6    visibly upset and crying.  When asked what was wrong, Jamerson

7    reported to her attorney that Croft had threatened her and her

8    family with physical violence.  Additionally, she told the

9    attorney that Croft's brother was in the gallery at the

10   hearing and was taking photographs of her with his cellular

11   phone.  The attorney notified the courtroom marshals of the

12   exchange between Croft, his family and Jamerson.  As a result,

13   Croft as removed from the courtroom.  Croft's family member

14   was admonished by the marshals for using his cellular phone.

15          Jamerson later provided her attorney with a

16   threatening letter which was sent to her by Joshua Croft prior

17   to the hearing while she was in custody of the Clark County

18   Detention Center.  Detectives later met with Jamerson's

19   attorney and recovered the letter and the envelope it was sent

20   in.  The letter was postmarked from CCDC and was addressed to

21   Jamerson from Joshua Croft with his inmate identification

22   number.  In the letter, Croft makes threats to have Jamerson

23   attacked in her cell, and he threatens to expose her

24   cooperation to other inmates at facilities she may be housed

25   at in the future.  In fact, in a postscript to the letter,

1  Croft specifically "thanks" Jamerson for speaking with

2  officers and notes because of her they were indicted for

3  additional charges.

4           Defendant acknowledges that all of the convenience

5  stores listed in the indictment in case number 2:13-19 were

6  involved in interstate and, therefore commerce from, one state

7  to another, and it was affected in some way by the robberies

8  as charged in the indictment.

9           The defendant admits that the follow property

10  either, A, constitutes or is derived from proceeds he obtained

11  directly or indirectly from his criminal violations, or, B,

12  was used, or intended to be used, in any manner or part, to

13  commit, or to facilitate the commission of, his criminal

14  violation:  A Taurus semiautomatic .40-caliber handgun with a

15  silver slide and black bottom bearing serial number SYJ44555

16  and any and all ammunition.

17           Is all of that a true statement, sir?

18                THE DEFENDANT:  Not all of it.

19                THE COURT:  What's not true?

20                THE DEFENDANT:  The allegations in the

21  courtroom.

22                THE COURT:  The allegation regarding threats?

23                THE DEFENDANT:  Yeah, the courtroom.  I got

24  carried out the courtroom and stuff.

25                THE COURT:  Then you didn't threaten her.

1           THE DEFENDANT:  Never happened.  I wrote the

2   letter, but the courtroom situation never happened.

3           THE COURT:  All right.  Then we don't have a

4   plea agreement, at least the plea with respect to the latter

5   count, so --

6           THE DEFENDANT:  Your Honor, I plead -- you're

7   right, I plead guilty, yes, it's true.  I'm sorry.

8           THE COURT:  I read it to you exactly as it's

9   written in the plea agreement, sir.  Is the statement as

10  written and as signed by you true or not true?

11          THE DEFENDANT:  It's true.

12          THE COURT:  You're telling me that under oath.

13          THE DEFENDANT:  It's true.

14          THE COURT:  And do you understand that by

15  admitting to me those facts under oath, you're admitting that

16  the government could prove their case against you on these

17  counts that you're pleading guilty to?

18          THE DEFENDANT:  Yes.

19          THE COURT:  How do you plead, then, guilty or

20  not guilty, to each of these counts?

21          THE DEFENDANT:  Guilty.

22          THE COURT:  And are you pleading guilty because

23  in truth and in fact you are guilty and for no other reason?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  Since you acknowledge that you are,

```
 1   in fact, guilty as charged in Counts 1, 2 and 11 in case

 2   2:13-19, and Count 1 in case number 2:13-54, and since you

 3   know your right to a trial, you know the maximum possibility

 4   punishments, and since it is a voluntary plea, I conditionally

 5   accept your guilty plea at this time.

 6          By conditional, sir, it just means that both you and

 7   I will have a chance to read that presentence report before I

 8   finally accept the guilty plea at the time of sentencing.

 9          It is the finding of the Court in the case of the

10   United States versus Joshua Croft that the defendant is fully

11   competent and capable of entering an informed plea, and that

12   his plea of guilty is a knowing and voluntary one supported by

13   an independent basis in fact containing all of the essential

14   elements of the offense charged, therefore the plea is

15   conditionally accepted.

16          It's for that reason, sir, that I asked you to sign

17   this form that allows me and you to look at the presentence

18   report because, under the criminal rules, I can't look at that

19   report until I have finally accepted the guilty plea unless

20   you consent in writing.

21          Do you understand the reason for that consent and

22   for the form?  In other words, unless you consent in writing,

23   I can't look at the presentence report or go forward with

24   sentencing until after I've accepted the plea.

25          So do you understand the purpose of the form, sir?
```

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Is there any reason why he shouldn't

3    sign it, counsel?

4              MR. GRASSO:  No, your Honor, he signed it and I

5    signed it.

6              THE COURT:  And it is voluntary on your part?

7              THE DEFENDANT:  Yes.

8              THE COURT:  I'll also sign it and approve it.

9    I've made the finding.

10          I'll now order that presentence investigation

11   report, Mr. Croft, by the probation department.  The officer

12   will make an appointment to interview you for the report.  I

13   do urge your full cooperation in giving information to the

14   officer because, as you might imagine, the report is very

15   important in determining your sentence.

16          However you have the right to read it, review it,

17   comment upon it before it's presented to the Court, and you

18   have the right to have your attorney, Mr. Grasso, present with

19   you when you give information to the officer to object or to

20   tell you not answer questions, for example.

21              A sentencing date, please.

22              THE CLERK:  Your Honor, sentencing is set for

23   March 18, 2014, at 1:30 p.m. in this courtroom number four.

24              THE COURT:  Your attorney will remind you of the

25   date and time.

1          Unless there's objection, I will order Mr. Croft's

2     continued custody status.

3                    MR. GRASSO:  And, your Honor, if we could, I

4     know it's important to Mr. Croft, and I just want this to go

5     as smoothly as possible, I'm obviously remaining -- and I

6     think Mr. Croft is okay with me remaining as his counsel, I

7     have already indicated to him --

8                    THE COURT:  For sentencing at least.

9                    MR. GRASSO:  For sentencing, and I've already

10    indicated to him that, you know, bygones are bygones,

11    whatever.

12                   THE COURT:  We've scheduled a date and time for

13    sentencing.  If you become aware that the presentence report

14    is finished earlier, I'm at your beck and call, you can move

15    the date up.

16                   MR. GRASSO:  And another thing is I think

17    Mr. Croft wanted me to recite what the calculations are in the

18    plea agreement which we really haven't done on the record.

19                   THE COURT:  You can, and with Mr. Croft's

20    understanding that I'm the one who makes the final

21    calculation.  Neither the government nor Mr. Croft can argue

22    anything different from the calculation contained in the plea

23    agreement, but I'm at liberty to do something different.  So

24    you certainly may recite them subject to that understanding.

25                   MR. GRASSO:  Thank you, your Honor.

1            Based on this plea, the base offense level for Count

2    1 is 20.  The base offense level for Count 20 -- I mean, for

3    Count 11 is 20.

4            The government is going to argue to the Court to

5    apply a five-level enhancement for the brandishing, and then

6    also the government is going to argue to the Court to apply a

7    two-level enhancement for the substantial risk of harm from

8    the chase with law enforcement that's alleged.  So you have a

9    27 as the adjusted base offense level.

10           The -- Count 1 of the other -- the 0054 indictment,

11   the tampering, is a base offense level of 14, plus 8 for

12   threatening bodily harm, therefore that one is a 24, it's

13   therefore under the 27.

14           And then there's a combined offense level issue

15   which, when it's all said and done, comes out to a base

16   offense level, after either a reduction of minus two or minus

17   three for the acceptance, either a 26 or a 25.

18           Now, part of this plea, and this is the important

19   part that Mr. Croft wanted me to recite, the government is

20   allowing the defense, as part of the plea agreement, to argue

21   to this Court three issues, one being the combined offense

22   level calculations as they're calculated one way by the

23   government, one way by probation, and we can step in at

24   sentencing and make our argument regarding what's the proper

25   combined offense level calculation.

1          Also, we're allowed under this plea agreement to

2    argue to the Court that the plus five does not apply because

3    there's already a 924(c) for brandishing, and there's a whole

4    lot of case law on that stuff, and that the plus two does not

5    apply because the automobile chase was not, as the Court -- as

6    the Court read, it was a short chase, therefore we're going to

7    be arguing that the plus two should not apply either.

8          And if that's the case, if the Court accepts that,

9    the plus five and plus two, or any combination thereof, but if

10   the plus five and plus two don't apply, Mr. Croft has -- the

11   additional levels not applying, that the guideline

12   calculations come out to, with a minus two or minus three for

13   acceptance, a 19 or an 18 on top of the 84 months for the

14   924(c).

15               THE COURT:  Now, just to clarify, you've just

16   simply recited to me what's in the plea agreement, correct?

17               MR. GRASSO:  Reciting --

18               THE COURT:  Nothing different from the plea

19   agreement.

20               MR. GRASSO:  Nothing different from the plea

21   agreement.

22               THE COURT:  Okay.  And you understand,

23   Mr. Croft, that, again, that's binding on the parties, but

24   it's not binding on me.  It's Probation, my department, that

25   makes recommendation to me of the proper calculation, and I'm

1   the one who has to finally find which guideline applies, and

2   I'm at liberty to do so.  Also, I'm at liberty -- and if I

3   disagree with the final calculation as I find it, I'm liberty

4   to set a sentence that's higher or lower than the guideline;

5   you understand that.

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  All right.  Very good.

8                    MR. GRASSO:  Thank you, your Honor.

9                    THE COURT:  Thank you so much.  Thank you,

10  Mr. Croft.

11                            -o0o-

12

13          I certify that the foregoing is a correct
            transcript from the record of proceedings
14          in the above-entitled matter.

15          /s/Margaret E. Griener        01/07/2014
            Margaret E. Griener, CCR #3, RDR
16          Official Reporter

17

18

19

20

21

22

23

24

25

## $

**$100** [3] - 32:3, 37:23, 45:11

## '

**'84** [1] - 41:13

## /

**/s/Margaret** [1] - 55:15

## 0

**0054** [1] - 53:10
**01/07/2014** [1] - 55:15

## 1

**1** [16] - 23:13, 27:25, 29:8, 29:18, 30:21, 31:20, 35:20, 36:8, 44:20, 46:16, 50:1, 50:2, 53:2, 53:10
**1)(A)(ii)and** [1] - 28:17
**11** [9] - 1:6, 2:1, 23:13, 29:9, 30:22, 36:1, 44:20, 50:1, 53:3
**11th** [1] - 4:23
**12** [1] - 25:19
**13** [2] - 5:25, 6:12
**13-19** [1] - 44:20
**13-CR-19** [1] - 29:9
**14** [1] - 53:11
**15** [1] - 35:19
**1512(b)** [2] - 29:19, 36:9
**16** [1] - 46:17
**18** [12] - 28:1, 28:16, 29:9, 29:19, 35:21, 35:24, 36:2, 36:9, 37:22, 38:13, 51:23, 54:13
**19** [1] - 54:13
**1951** [3] - 28:1, 35:22, 36:2
**1951(a** [1] - 29:10
**1:30** [1] - 51:23

## 2

**2** [10] - 23:13, 28:15, 29:8, 29:10, 31:3, 35:23, 36:3, 38:5, 44:20, 50:1
**2)** [1] - 28:17
**20** [5] - 30:24, 31:22, 53:2, 53:3
**2012** [5] - 28:8, 44:19,

46:4, 46:5
**2013** [6] - 1:6, 2:1, 4:23, 35:19, 36:7, 46:17
**2014** [3] - 5:25, 6:18, 51:23
**21st** [1] - 46:4
**22nd** [1] - 46:5
**24** [1] - 24:6, 53:12
**25** [1] - 53:17
**250,000** [3] - 30:24, 31:4, 31:21
**26** [1] - 53:17
**27** [2] - 53:9, 53:13
**27th** [1] - 46:5
**28** [2] - 28:8, 44:19
**2:13-19** [4] - 30:21, 47:2, 48:5, 50:2
**2:13-54** [2] - 29:18, 50:2
**2:13-CR-19** [4] - 23:13, 35:18, 36:12, 38:6
**2:13-CR-19-RCJ-GWF** [1] - 1:4
**2:13-CR-54** [4] - 23:14, 31:19, 36:6, 46:16
**2:13-CR-54-RCJ-CWH** [1] - 1:5
**2:30** [1] - 44:19

## 3

**3** [2] - 1:22, 55:15
**300** [3] - 45:10, 45:14, 46:14
**3553** [2] - 37:22, 38:13
**3rd** [1] - 6:18

## 4

**40-caliber** [1] - 48:14
**400** [1] - 1:23
**4A1.3(b)(1)** [1] - 38:14

## 5

**5:00** [3] - 10:15, 13:25, 16:8
**5th** [1] - 36:7

## 6

**60** [1] - 42:1

## 7

**700** [1] - 44:21
**775)329-9980** [1] -

1:24

## 8

**8** [1] - 53:11
**84** [2] - 38:5, 54:13
**89501** [1] - 1:23

## 9

**90** [4] - 41:25, 42:1, 42:8, 42:9
**924(c** [3] - 28:16, 29:1, 54:3
**924(c)** [2] - 23:11, 54:14
**924(c)(1)(A)(ii** [1] - 35:25
**9:00** [4] - 5:25, 6:1, 6:12, 6:18
**9:12** [1] - 2:1

## A

**a.m** [5] - 5:25, 6:1, 6:12, 6:18, 44:19
**A.M** [1] - 2:1
**abide** [1] - 32:15
**able** [1] - 45:19
**abolished** [1] - 37:23
**above-entitled** [1] - 55:14
**accept** [5] - 18:21, 26:18, 27:7, 50:5, 50:8
**acceptance** [5] - 37:2, 37:4, 38:7, 53:17, 54:13
**accepted** [4] - 8:6, 50:15, 50:19, 50:24
**accepting** [2] - 23:16, 44:6
**accepts** [2] - 33:16, 54:8
**accomplish** [1] - 28:13
**according** [2] - 4:17, 14:2
**acknowledge** [2] - 34:23, 49:25
**acknowledgements** [1] - 38:16
**acknowledges** [5] - 36:19, 37:6, 37:15, 38:8, 48:4
**Act** [1] - 41:13
**acted** [2] - 29:15, 30:1
**acting** [1] - 35:2
**acts** [1] - 38:6
**actual** [1] - 29:14

**add** [1] - 33:4
**added** [2] - 16:22, 16:23
**addiction** [1] - 24:11
**addition** [1] - 32:9
**additional** [8] - 32:17, 37:17, 37:18, 46:2, 46:3, 46:22, 48:3, 54:11
**additionally** [1] - 47:8
**addressed** [1] - 47:20
**adjudged** [1] - 33:17
**adjusted** [1] - 53:9
**adjustment** [2] - 38:7, 38:12
**admit** [1] - 44:14
**admits** [1] - 48:9
**admitted** [1] - 46:2
**admitting** [4] - 26:22, 30:13, 49:15
**admonished** [1] - 47:14
**adopt** [1] - 42:6
**advice** [1] - 35:3
**advisory** [2] - 36:22, 43:2
**affect** [1] - 43:19
**affected** [2] - 29:17, 48:7
**affirm** [1] - 18:24
**aforementioned** [1] - 46:7
**afternoon** [1] - 4:17
**agents** [1] - 46:21
**ago** [4] - 2:16, 3:20, 4:10, 7:8
**agree** [6] - 3:12, 9:6, 38:24, 39:23, 40:1
**agreed** [15] - 2:15, 2:16, 3:14, 9:22, 10:18, 10:19, 13:13, 13:21, 14:16, 16:11, 17:11, 17:12, 34:24
**agreeing** [2] - 7:15, 43:16
**agreement** [64] - 3:15, 3:18, 3:21, 9:4, 11:23, 11:25, 12:5, 12:7, 12:22, 13:3, 13:5, 13:10, 13:13, 13:14, 13:16, 13:18, 13:21, 13:22, 14:3, 14:4, 14:16, 14:17, 14:21, 14:23, 14:25, 15:5, 15:6, 15:17, 15:18, 15:25, 16:6, 16:9, 17:9, 18:4, 18:5, 18:21, 19:16, 19:19, 21:12, 34:6, 35:6, 35:10, 35:14, 36:11,

36:16, 37:12, 37:21, 38:12, 38:15, 38:22, 38:25, 39:12, 39:25, 40:10, 40:23, 49:4, 49:9, 52:18, 52:23, 53:20, 54:1, 54:16, 54:19, 54:21
**agrees** [4] - 35:16, 36:4, 36:10, 36:13
**alcoholic** [1] - 24:8
**allegation** [1] - 48:22
**allegations** [2] - 36:12, 48:20
**alleged** [1] - 53:8
**allocute** [1] - 44:4
**allow** [1] - 10:9
**allowed** [1] - 54:1
**allowing** [1] - 53:20
**allows** [1] - 50:17
**almost** [1] - 38:18
**amended** [1] - 44:11
**AMERICA** [1] - 1:4
**ammunition** [1] - 48:16
**and(2** [1] - 35:25
**answer** [2] - 22:16, 51:20
**answered** [1] - 41:21
**anyway** [1] - 17:21
**apologize** [4] - 16:19, 16:20, 20:24, 23:2
**appeal** [2] - 43:9, 43:11
**appear** [2] - 30:5
**appearances** [1] - 2:5
**APPEARANCES** [1] - 1:13
**appearing** [1] - 2:7
**appellate** [1] - 38:18
**applicable** [4] - 37:13, 38:2, 38:3, 38:20
**applied** [1] - 34:3
**applies** [1] - 55:1
**apply** [7] - 41:19, 53:5, 53:6, 54:2, 54:5, 54:7, 54:10
**applying** [1] - 54:11
**appointed** [1] - 25:10
**appointment** [1] - 51:12
**approached** [1] - 45:2
**approve** [1] - 51:8
**area** [1] - 45:8
**argue** [8] - 38:3, 40:17, 40:22, 52:21, 53:4, 53:6, 53:20, 54:2
**arguing** [1] - 54:7
**argument** [2] - 41:1, 53:24

2

**armed** [1] - 44:20
**arrested** [1] - 45:17
**assessment** [2] - 32:2, 37:24
**assistance** [1] - 38:19
**Assistant** [1] - 1:15
**assisting** [1] - 46:2
**associate** [5] - 9:5, 10:3, 12:2, 12:6, 12:9
**assuming** [1] - 19:23
**attacked** [1] - 47:23
**attempted** [1] - 29:24
**attorney** [18] - 3:7, 26:7, 27:17, 34:10, 34:25, 40:17, 40:22, 41:18, 42:13, 47:5, 47:7, 47:9, 47:11, 47:15, 47:19, 51:18, 51:24
**Attorney** [1] - 1:18
**attorney's** [1] - 35:3
**Attorneys** [1] - 1:15
**attorneys** [1] - 35:7
**automatic** [1] - 44:25
**automobile** [2] - 46:14, 54:5
**available** [2] - 6:10, 42:14
**aware** [5] - 30:17, 30:20, 40:9, 46:20, 52:13

**B**

**background** [2] - 42:4, 43:20
**bag** [2] - 45:4, 45:23
**base** [7] - 15:4, 37:6, 53:1, 53:2, 53:9, 53:11, 53:15
**based** [4] - 7:13, 25:6, 46:13, 53:1
**basic** [1] - 41:17
**basis** [2] - 22:7, 50:13
**bearing** [1] - 48:15
**became** [1] - 28:12
**beck** [1] - 52:14
**become** [2] - 47:5, 52:13
**BEFORE** [1] - 1:2
**begin** [1] - 5:8
**beginning** [4] - 3:3, 3:6, 6:15, 28:7
**behalf** [3] - 2:7, 2:10, 26:11
**behest** [1] - 5:10
**behind** [1] - 45:2
**below** [2] - 38:10, 43:11

**bet** [1] - 17:16
**between** [2] - 17:1, 47:12
**beverages** [1] - 24:8
**beyond** [2] - 26:1, 28:6
**bind** [5] - 15:6, 15:7, 15:22, 15:25, 40:11
**binding** [5] - 15:5, 15:18, 42:17, 54:23, 54:24
**binds** [2] - 40:10
**bit** [3] - 23:20, 32:5, 41:12
**black** [6] - 44:25, 45:10, 45:14, 45:18, 46:11, 48:15
**bodily** [1] - 53:12
**bottom** [2] - 7:12, 48:15
**bound** [6] - 15:20, 17:12, 17:17, 41:9, 42:21, 43:5
**brandish** [1] - 28:18
**brandished** [1] - 28:22
**brandishing** [5] - 31:3, 31:25, 35:23, 53:5, 54:3
**brief** [1] - 45:15
**briefly** [1] - 44:17
**bring** [1] - 22:9
**brother** [1] - 47:9
**brought** [3] - 18:19, 45:5
**bump** [1] - 6:7
**bumping** [2] - 6:10, 6:11
**burden** [3] - 25:24, 26:1, 26:3
**bygones** [2] - 52:10

**C**

**calculate** [2] - 37:16, 43:10
**calculated** [2] - 40:23, 53:22
**calculates** [2] - 40:15, 40:21, 41:4
**calculating** [1] - 16:1
**calculation** [12] - 3:15, 15:10, 16:11, 17:2, 17:5, 17:21, 39:19, 52:21, 52:22, 53:25, 54:25, 55:3
**calculations** [5] - 15:9, 37:1, 52:17, 53:22, 54:12
**calendar** [3] - 5:4, 5:6, 21:12

**cannot** [2] - 5:8, 40:25
**capable** [1] - 50:11
**captured** [1] - 45:13
**car** [2] - 45:15, 45:18
**carried** [2] - 28:22, 48:24
**carry** [3] - 25:24, 26:1, 29:1
**carrying** [3] - 29:5, 29:6, 44:25
**case** [31] - 4:20, 6:2, 6:4, 6:5, 6:8, 6:9, 6:13, 23:13, 23:14, 24:17, 25:11, 30:6, 30:21, 31:9, 32:7, 32:11, 34:7, 35:18, 36:6, 36:12, 38:5, 41:19, 46:16, 47:2, 48:5, 49:16, 50:1, 50:2, 50:9, 54:4, 54:8
**cases** [2] - 14:24, 47:4
**cash** [1] - 45:7
**category** [1] - 37:9
**caught** [1] - 16:23
**caused** [2] - 35:9, 40:3
**CCDC** [1] - 47:20
**CCR** [2] - 1:22, 55:15
**cell** [1] - 47:23
**cellular** [2] - 47:10, 47:14
**Center** [1] - 47:18
**certainly** [5] - 16:19, 33:5, 40:22, 42:13, 52:24
**certify** [1] - 55:13
**chance** [2] - 6:9, 50:7
**CHANGE** [1] - 1:11
**change** [8] - 2:12, 2:13, 5:5, 16:24, 17:14, 17:16, 18:17, 42:6
**changed** [8] - 4:1, 4:3, 9:25, 15:1, 15:14, 15:16, 16:12, 16:25
**charge** [1] - 36:5
**charged** [12] - 26:23, 27:25, 28:10, 28:16, 28:21, 28:24, 29:8, 29:19, 37:13, 48:8, 50:1, 50:14
**charges** [14] - 14:24, 15:1, 22:19, 22:23, 27:22, 30:8, 30:9, 35:17, 39:14, 39:17, 39:21, 43:18, 46:25, 48:3
**chase** [5] - 45:15, 45:19, 53:8, 54:5, 54:6

**CHIEF** [1] - 1:2
**Chilicia** [4] - 28:9, 44:24, 45:16, 46:24
**chose** [2] - 27:23, 43:4
**Chrysler** [2] - 45:10, 45:14, 46:14
**cigarettes** [2] - 45:6, 45:23
**Circle** [1] - 44:21
**Circuit** [1] - 46:18
**civil** [2] - 6:14, 33:18
**claims** [1] - 38:19
**clarify** [1] - 54:15
**Clark** [1] - 47:17
**classes** [1] - 24:18
**CLERK** [10] - 4:23, 5:2, 5:24, 6:3, 6:6, 6:14, 6:18, 21:14, 22:1, 51:22
**clerk** [3] - 45:3, 45:11
**Clerk** [2] - 5:19, 21:11
**clerk's** [2] - 45:7, 45:17
**client** [3] - 14:9, 22:9, 34:21
**clients** [1] - 11:19
**closed** [1] - 16:15
**coconspirator** [1] - 29:4
**Code** [10] - 28:1, 28:16, 29:9, 29:19, 35:21, 35:24, 36:2, 36:9, 37:22, 38:13
**codefendant** [3] - 34:4, 44:24, 46:15
**codefendants** [1] - 45:16
**college** [3] - 24:1, 24:2
**combination** [1] - 54:9
**combine** [1] - 32:24
**combined** [3] - 53:14, 53:21, 53:25
**coming** [1] - 16:19
**comment** [1] - 51:17
**commerce** [9] - 28:3, 28:10, 29:11, 29:16, 30:22, 30:23, 35:20, 36:1, 48:6
**Commission** [1] - 41:14
**commission** [1] - 48:13
**commit** [1] - 48:13
**commits** [1] - 38:6
**committed** [2] - 26:23, 28:20
**committing** [2] - 46:4, 46:14
**competence** [1] - 25:3
**competent** [4] - 25:8,

26:2, 28:5, 50:11
**completely** [1] - 41:16
**complex** [1] - 15:9
**complications** [2] - 19:25, 20:1
**comply** [2] - 21:9, 41:15
**concealed** [2] - 45:12, 46:11
**concept** [1] - 43:14
**concerned** [1] - 5:9
**conditional** [1] - 50:6
**conditionally** [2] - 50:4, 50:15
**conditions** [1] - 32:15
**conduct** [3] - 37:12, 43:15, 43:18
**confessed** [1] - 46:3
**confession** [1] - 46:1
**confused** [2] - 42:23, 42:25
**consecutive** [3] - 31:8, 31:25, 38:5
**consecutively** [2] - 31:11, 31:15
**consent** [5] - 12:16, 12:20, 50:20, 50:21, 50:22
**consequences** [1] - 38:23
**consequently** [1] - 5:12
**consider** [2] - 36:20, 37:11
**conspiracy** [4] - 28:2, 28:13, 30:22, 35:20
**conspired** [1] - 28:9
**constitutes** [1] - 48:10
**constitution** [1] - 25:15
**consult** [2] - 41:15, 41:16
**contained** [3] - 40:3, 40:18, 52:22
**containing** [1] - 50:13
**contempt** [1] - 2:23
**content** [1] - 13:9
**contents** [1] - 11:23
**continuance** [1] - 5:9
**continue** [1] - 10:9
**continued** [3] - 4:24, 5:3, 52:2
**continuing** [1] - 28:7
**convenience** [2] - 46:8, 48:4
**conversation** [5] - 8:6, 12:7, 15:12, 17:1
**conversations** [2] - 14:12
**conveyed** [1] - 34:19

3

**convicted** [2] - 25:21, 28:25
**convictions** [1] - 43:20
**cooperation** [2] - 47:24, 51:13
**copies** [2] - 9:24, 18:19
**copy** [14] - 13:6, 18:8, 18:10, 18:11, 18:12, 18:13, 18:22, 20:25, 21:3, 21:24, 21:25, 22:19, 27:10
**correct** [16] - 5:2, 6:3, 6:6, 9:13, 14:20, 16:2, 16:21, 17:22, 21:25, 23:14, 23:15, 39:13, 44:9, 44:12, 54:16, 55:13
**correction** [1] - 16:21
**counsel** [13] - 7:17, 7:21, 8:9, 8:17, 13:17, 19:11, 22:19, 25:2, 31:7, 34:19, 38:20, 51:3, 52:6
**Counsel** [1] - 38:24
**count** [4] - 31:10, 32:3, 37:24, 49:5
**Count** [17] - 23:13, 27:25, 28:15, 29:18, 31:3, 31:20, 35:20, 35:23, 36:1, 36:8, 38:5, 46:16, 50:2, 53:1, 53:2, 53:3, 53:10
**counter** [1] - 45:2
**counts** [9] - 23:8, 23:9, 26:24, 30:18, 36:14, 37:11, 43:17, 49:17, 49:20
**Counts** [5] - 23:13, 29:8, 30:21, 44:20, 50:1
**County** [1] - 47:17
**course** [4] - 4:15, 6:11, 31:24, 43:8
**court** [4] - 7:8, 19:1, 19:12, 46:24
**COURT** [222] - 1:1, 2:4, 2:11, 2:20, 2:23, 3:4, 3:15, 3:19, 3:23, 4:2, 4:4, 4:9, 4:12, 4:19, 4:22, 4:24, 5:3, 5:15, 5:17, 6:1, 6:4, 6:7, 6:17, 6:19, 7:6, 7:9, 7:12, 7:15, 7:17, 7:21, 8:1, 8:9, 8:15, 8:22, 8:25, 9:3, 9:14, 9:21, 10:5, 10:8, 10:15, 10:17, 11:3,

11:14, 11:22, 12:2, 12:5, 12:11, 12:13, 12:16, 12:19, 12:21, 12:24, 13:4, 13:7, 13:14, 13:16, 13:20, 14:6, 14:9, 14:14, 15:5, 15:14, 15:17, 15:20, 15:22, 15:24, 16:5, 16:8, 16:10, 16:14, 17:2, 17:5, 17:7, 17:9, 17:12, 17:16, 17:22, 17:25, 18:14, 18:17, 18:24, 19:1, 19:6, 19:9, 19:11, 19:15, 19:21, 20:1, 20:4, 20:9, 20:14, 20:18, 20:23, 21:2, 21:7, 21:15, 21:19, 21:23, 22:2, 22:6, 22:9, 22:15, 22:18, 22:21, 22:23, 23:1, 23:5, 23:8, 23:12, 23:16, 23:22, 23:25, 24:2, 24:4, 24:6, 24:10, 24:14, 24:19, 24:22, 24:24, 25:2, 25:6, 25:15, 25:19, 25:23, 26:5, 26:10, 26:13, 26:18, 26:22, 27:1, 27:6, 27:10, 27:14, 27:16, 27:19, 27:21, 30:12, 30:17, 30:20, 31:2, 31:7, 31:10, 31:13, 31:17, 31:24, 32:5, 32:14, 32:19, 32:24, 33:9, 33:13, 33:16, 33:22, 33:25, 34:3, 34:6, 34:9, 34:12, 34:15, 34:17, 34:19, 34:23, 35:2, 35:5, 35:13, 38:24, 39:2, 39:7, 39:11, 39:15, 39:18, 39:22, 39:24, 40:2, 40:6, 40:9, 40:14, 40:20, 40:25, 41:3, 41:7, 41:12, 41:21, 41:24, 42:9, 42:12, 42:16, 42:21, 42:24, 43:1, 43:8, 43:14, 43:23, 44:3, 44:7, 44:11, 44:14, 44:17, 48:19, 48:22, 48:25, 49:3, 49:8, 49:12, 49:14, 49:19, 49:22, 49:25, 51:2, 51:6, 51:8, 51:24, 52:8, 52:12, 52:19, 54:15, 54:18, 54:22, 55:7, 55:9
**Court** [41] - 9:11, 9:12,

9:15, 10:2, 10:3, 10:12, 11:10, 11:16, 13:3, 13:6, 15:18, 15:22, 15:25, 18:22, 26:6, 32:9, 32:16, 33:4, 33:10, 33:16, 36:19, 36:22, 37:6, 37:8, 37:11, 37:18, 38:4, 38:8, 38:21, 40:11, 41:14, 46:18, 50:9, 51:17, 53:4, 53:6, 53:21, 54:2, 54:5, 54:6, 54:8
**courtroom** [9] - 46:23, 47:4, 47:11, 47:13, 48:21, 48:23, 48:24, 49:2, 51:23
**covered** [1] - 38:11
**coward** [1] - 2:15
**credit** [1] - 32:21
**crime** [12] - 28:2, 28:17, 28:18, 28:20, 28:23, 29:2, 29:4, 29:5, 29:10, 29:20, 31:4, 35:24
**criminal** [11] - 6:4, 6:9, 32:7, 35:17, 37:7, 37:8, 37:9, 43:20, 48:11, 48:13, 50:18
**CRISTINA** [1] - 1:14
**Cristina** [3] - 2:7, 4:16, 8:2
**CROFT** [1] - 1:7
**Croft** [47] - 2:5, 2:10, 2:13, 5:13, 22:4, 22:11, 23:17, 28:8, 28:12, 28:20, 28:21, 29:13, 29:15, 39:3, 39:8, 44:7, 45:1, 45:3, 45:5, 45:6, 45:7, 45:9, 45:16, 46:2, 46:4, 46:17, 46:20, 46:23, 46:25, 47:3, 47:7, 47:12, 47:13, 47:16, 47:21, 47:22, 48:1, 50:10, 51:11, 52:4, 52:6, 52:17, 52:21, 53:19, 54:10, 54:23, 55:10
**Croft's** [6] - 5:20, 46:22, 47:9, 47:13, 52:1, 52:19
**cross** [1] - 26:8
**cross-examine** [1] - 26:8
**crying** [1] - 47:6
**custody** [3] - 2:10, 47:17, 52:2

## D

**DA** [1] - 2:16
**date** [9] - 4:20, 5:19, 5:24, 28:7, 42:14, 51:21, 51:25, 52:12, 52:15
**dates** [1] - 5:23
**days** [4] - 41:25, 42:1, 42:8, 42:9
**deal** [38] - 2:17, 3:10, 3:12, 3:13, 4:3, 4:6, 4:7, 4:11, 4:14, 4:15, 4:18, 5:12, 6:22, 6:23, 6:24, 6:25, 7:2, 7:15, 7:17, 7:20, 7:21, 8:4, 8:6, 8:16, 9:17, 9:18, 9:19, 9:21, 9:23, 9:24, 9:25, 11:21, 20:19
**dealing** [1] - 8:17
**deals** [1] - 14:23
**DECEMBER** [1] - 1:6, 4:23, 5:1, 28:8, 44:19, 46:4, 46:5
**decide** [1] - 21:4
**defendant** [32] - 5:5, 5:11, 22:14, 22:18, 25:7, 28:25, 29:1, 29:3, 29:24, 30:1, 30:6, 31:13, 35:16, 36:4, 36:10, 36:14, 36:19, 37:3, 37:6, 37:15, 37:20, 38:2, 38:6, 38:8, 38:10, 38:18, 44:1, 46:12, 48:4, 48:9, 50:10
**Defendant** [9] - 1:8, 28:8, 28:12, 28:20, 28:21, 29:13, 29:15, 45:1, 46:17
**DEFENDANT** [138] - 1:18, 2:14, 2:21, 2:25, 3:5, 3:17, 3:22, 3:25, 4:3, 4:5, 4:10, 4:21, 5:14, 5:16, 6:21, 7:7, 7:11, 7:14, 7:16, 7:19, 7:25, 8:14, 10:21, 11:1, 11:13, 12:4, 12:25, 13:15, 13:19, 14:18, 16:13, 18:8, 18:16, 19:18, 19:24, 20:3, 20:6, 20:17, 20:22, 21:17, 22:5, 22:8, 22:17, 22:25, 23:4, 23:21, 23:23, 24:1, 24:3, 24:5, 24:9, 24:13, 24:16, 24:21,

24:23, 25:1, 25:14, 25:18, 25:22, 26:4, 26:9, 26:12, 26:17, 26:21, 26:25, 27:5, 27:9, 27:12, 27:15, 27:18, 27:20, 30:11, 30:16, 30:19, 31:1, 31:6, 31:12, 31:16, 31:23, 32:4, 32:13, 32:18, 32:23, 33:8, 33:12, 33:15, 33:21, 33:24, 34:2, 34:5, 34:8, 34:11, 34:14, 34:16, 34:18, 35:1, 35:4, 35:12, 39:14, 39:16, 39:20, 39:23, 40:1, 40:5, 40:7, 40:13, 40:19, 40:24, 41:2, 41:6, 41:11, 41:20, 41:23, 42:8, 42:10, 42:15, 42:20, 42:23, 42:25, 43:7, 43:13, 43:22, 44:10, 44:13, 44:16, 48:18, 48:20, 48:23, 49:1, 49:6, 49:11, 49:13, 49:18, 49:21, 49:24, 51:1, 51:7, 55:6
**defendant's** [5] - 25:3, 36:21, 37:7, 37:9, 38:16
**defense** [1] - 53:20
**definitely** [1] - 42:15
**delay** [1] - 30:2
**demanding** [1] - 46:10
**depart** [1] - 37:14
**department** [8] - 16:1, 40:15, 40:16, 40:21, 42:1, 42:12, 51:11, 54:24
**deportation** [1] - 38:23
**deprive** [1] - 33:17
**derived** [1] - 48:10
**detail** [1] - 14:22
**detectives** [2] - 45:25, 47:18
**Detention** [1] - 47:18
**determine** [4] - 35:10, 37:8, 41:25, 42:1
**determined** [4] - 36:24, 38:4, 38:21, 42:17
**determining** [3] - 36:21, 37:13, 51:15
**different** [11] - 3:13, 4:6, 4:10, 4:11, 14:3, 14:17, 41:8, 52:22, 52:23, 54:18, 54:20
**differently** [2] - 37:16,

40:15
**directly** [2] - 28:22, 48:11
**disagree** [3] - 39:18, 39:24, 55:3
**disclaim** [1] - 19:21
**discovery** [2] - 10:24, 11:9
**discretion** [1] - 36:22
**discuss** [2] - 25:11, 42:4
**discussed** [6] - 6:25, 26:20, 27:16, 34:9, 41:18, 43:18
**discussion** [3] - 37:1, 37:21, 38:15
**Discussion** [1] - 39:4
**dismiss** [1] - 36:13
**dismissed** [2] - 37:11, 47:1
**disrespect** [1] - 3:6
**District** [1] - 46:18
**DISTRICT** [3] - 1:1, 1:1, 1:2
**document** [2] - 10:6, 19:23
**done** [4] - 9:16, 14:2, 52:18, 53:15
**dory** [1] - 11:12
**doubt** [3] - 25:3, 26:2, 28:6
**down** [4] - 2:19, 2:22, 20:5, 43:1
**downward** [2] - 38:7, 38:12
**drove** [1] - 45:9
**drug** [1] - 24:18
**drugs** [2] - 24:7, 24:11
**drunk** [1] - 24:7
**dude** [1] - 2:18
**during** [13] - 8:5, 12:10, 15:10, 26:16, 28:18, 28:23, 29:2, 29:6, 31:3, 45:18, 45:21, 46:24, 47:5
**dust** [1] - 13:23

## E

**e-mail** [1] - 20:12
**East** [1] - 44:21
**Eighth** [1] - 46:18
**either** [6] - 25:2, 37:3, 48:10, 53:16, 53:17, 54:7
**elements** [10] - 27:22, 28:4, 28:19, 29:12, 29:22, 30:8, 30:10, 30:14, 36:17, 50:14
**end** [2] - 38:3, 38:11

**enforcement** [2] - 46:21, 53:8
**English** [1] - 23:3
**enhancement** [4] - 23:10, 53:5, 53:7
**enter** [4] - 5:5, 5:21, 10:8, 13:10
**entered** [2] - 44:24, 45:2
**entering** [1] - 50:11
**entitled** [2] - 25:16, 55:14
**envelope** [1] - 47:19
**error** [2] - 16:22, 16:23
**especially** [1] - 27:22
**essential** [1] - 50:13
**established** [1] - 42:18
**evidence** [3] - 26:2, 26:11, 28:6
**exact** [1] - 18:5
**exactly** [7] - 7:16, 11:13, 14:18, 16:3, 16:13, 17:23, 20:3, 49:8
**examine** [1] - 26:8
**example** [5] - 26:22, 30:20, 40:14, 40:20, 51:20
**exceed** [3] - 32:11, 33:1, 33:6
**except** [2] - 38:19, 40:17
**exchange** [1] - 47:12
**excused** [1] - 21:4
**execution** [1] - 45:21
**explain** [2] - 8:14, 27:21
**explained** [3] - 16:3, 27:19, 39:21
**explanation** [1] - 19:7
**expose** [1] - 47:23

## F

**face** [3] - 18:11, 21:13, 46:11
**faces** [1] - 45:12
**facilitate** [1] - 48:13
**facilities** [1] - 47:24
**fact** [9] - 19:9, 24:24, 26:3, 26:6, 37:22, 47:25, 49:23, 50:1, 50:13
**factors** [1] - 37:22
**facts** [8] - 36:17, 43:24, 44:4, 44:6, 44:8, 44:15, 44:18, 49:15
**faggot** [1] - 2:21

**fairness** [1] - 35:10
**family** [3] - 47:8, 47:12, 47:13
**far** [4] - 5:9, 14:7, 23:22, 23:23
**fashion** [1] - 32:20
**faster** [2] - 42:11, 42:13
**fault** [2] - 8:11, 8:12
**fax** [9] - 7:17, 7:21, 7:23, 9:4, 9:18, 14:15, 18:5, 19:20, 20:10
**faxed** [18] - 9:17, 12:6, 15:17, 16:5, 17:23, 18:23, 18:25, 19:2, 19:9, 19:10, 19:12, 19:22, 19:23, 19:25, 20:6, 20:20, 21:5, 21:24
**fear** [1] - 29:15
**February** [2] - 6:16, 6:18
**federal** [1] - 47:1
**fee** [2] - 32:2, 37:24
**felony** [2] - 33:13, 33:17
**female** [1] - 44:23
**few** [1] - 21:1
**fighting** [1] - 3:9
**final** [2] - 52:20, 55:3
**finally** [9] - 10:12, 29:18, 41:4, 42:5, 42:6, 43:14, 50:8, 50:19, 55:1
**fine** [3] - 30:23, 31:4, 31:20
**fines** [1] - 30:18
**finish** [1] - 12:3
**finished** [1] - 52:14
**firearm** [10] - 28:18, 28:23, 29:2, 29:5, 29:6, 31:3, 32:1, 33:19, 35:23, 45:18
**first** [8] - 6:13, 19:3, 23:20, 24:17, 28:7, 28:20, 29:13, 29:24
**five** [10] - 19:15, 20:15, 21:4, 21:15, 21:21, 32:11, 53:5, 54:2, 54:9, 54:10
**five-level** [1] - 53:5
**fixed** [3] - 40:5, 40:7
**fled** [1] - 45:9
**floor** [1] - 45:9
**follow** [4] - 32:11, 38:9, 40:16, 48:9
**followed** [2] - 8:18, 38:4
**following** [4] - 6:14,

35:17, 36:5, 45:15
**follows** [1] - 29:9
**FOR** [2] - 1:14, 1:18
**force** [3] - 29:15, 29:25
**forced** [2] - 33:22, 45:8
**foregoing** [1] - 55:13
**foreign** [2] - 14:7, 14:15
**foreseeable** [1] - 29:7
**forfeits** [1] - 37:5
**forfeiture** [3] - 36:10, 36:11, 38:16
**form** [3] - 50:17, 50:22, 50:25
**format** [1] - 20:13
**forth** [6] - 9:20, 10:11, 10:12, 35:17, 36:5, 36:11
**forward** [7] - 2:13, 5:11, 5:18, 6:9, 6:13, 22:7, 50:23
**four** [4] - 23:21, 46:2, 46:3, 51:23
**fourth** [1] - 23:10
**fucking** [1] - 2:21
**full** [2] - 46:1, 51:13
**fully** [2] - 23:2, 50:10
**furnished** [1] - 22:18
**furtherance** [1] - 35:23
**future** [2] - 21:11, 47:25

## G

**Gabriel** [1] - 2:9
**GABRIEL** [1] - 1:18
**gallery** [1] - 47:9
**given** [3] - 18:4, 21:23, 21:24
**gloves** [3] - 45:12, 45:22, 46:11
**Gordon** [1] - 16:20
**government** [24] - 15:11, 16:1, 16:10, 25:23, 26:1, 26:6, 28:5, 29:23, 30:13, 34:25, 39:9, 40:10, 40:17, 40:25, 41:7, 41:9, 43:16, 44:12, 49:16, 52:21, 53:4, 53:6, 53:19, 53:23
**government's** [1] - 15:2
**grabbed** [1] - 45:6
**grade** [1] - 23:24
**graduate** [1] - 24:2
**graduated** [1] - 23:23

**grand** [2] - 35:18, 36:6
**Grasso** [7] - 2:10, 16:21, 16:23, 20:13, 25:10, 43:24, 51:18
**GRASSO** [69] - 1:18, 2:9, 4:16, 7:23, 8:2, 8:21, 8:24, 9:2, 9:8, 9:15, 9:23, 10:7, 10:10, 10:16, 10:19, 10:22, 11:2, 11:4, 11:15, 12:1, 12:8, 12:12, 12:15, 12:17, 12:20, 12:23, 13:2, 13:6, 13:12, 13:18, 13:21, 14:8, 14:10, 14:19, 15:7, 15:15, 15:19, 15:21, 15:23, 16:3, 16:7, 16:9, 18:11, 18:18, 18:25, 19:3, 19:8, 19:10, 19:14, 22:20, 22:22, 23:7, 23:9, 23:15, 25:5, 34:22, 39:1, 39:5, 39:9, 44:2, 44:5, 51:4, 52:3, 52:9, 52:16, 52:25, 54:17, 54:20, 55:8
**Griener** [3] - 1:22, 55:15, 55:15
**grocery** [2] - 45:4, 45:23
**grounds** [1] - 37:19
**grouped** [1] - 14:24
**grouping** [3] - 14:24, 15:1, 15:9
**guideline** [22] - 37:13, 38:2, 38:4, 38:11, 38:13, 38:21, 39:19, 40:15, 41:4, 41:25, 42:2, 42:6, 42:16, 42:19, 43:2, 43:5, 43:10, 43:11, 43:12, 54:11, 55:1, 55:4
**Guidelines** [1] - 36:20
**guidelines** [5] - 36:21, 37:10, 37:16, 41:14, 41:19
**guilty** [43] - 21:10, 23:7, 23:12, 23:19, 25:1, 25:12, 25:17, 25:20, 26:3, 26:18, 27:8, 27:24, 28:2, 29:11, 29:20, 30:13, 33:17, 33:23, 34:4, 35:9, 35:17, 36:5, 36:18, 37:20, 40:4, 41:10, 42:22, 43:5, 43:25, 44:8, 49:7, 49:17, 49:19, 49:20, 49:21, 49:22, 49:23,

5

49:24, 50:1, 50:5, 50:8, 50:12, 50:19
**gum** [2] - 45:6, 45:23

## H

**half** [1] - 11:20
**hand** [12] - 8:11, 8:13, 9:19, 9:25, 10:6, 13:14, 13:16, 20:14, 20:23, 21:2, 22:13
**handed** [3] - 3:16, 3:19, 21:20
**handgun** [3] - 44:25, 46:9, 48:14
**hard** [1] - 11:5
**harm** [2] - 53:7, 53:12
**head** [1] - 16:17
**hearing** [8] - 16:20, 25:9, 42:6, 46:18, 46:19, 46:24, 47:10, 47:17
**hearings** [1] - 5:7
**held** [2] - 39:4, 46:20
**help** [1] - 24:22
**high** [1] - 24:16
**higher** [6] - 33:6, 40:21, 42:18, 43:4, 43:9, 55:4
**history** [2] - 37:8, 37:9
**hold** [3] - 4:22, 5:8, 42:5
**hone** [1] - 41:15
**Honor** [46] - 2:6, 2:9, 2:25, 3:6, 3:18, 4:16, 4:21, 5:24, 6:6, 7:3, 9:8, 12:8, 13:1, 14:12, 16:18, 17:15, 17:24, 18:9, 19:4, 19:14, 19:24, 20:12, 20:22, 20:24, 21:6, 21:14, 22:1, 22:20, 22:22, 23:7, 23:15, 25:4, 25:5, 31:9, 34:22, 35:15, 39:1, 39:6, 44:2, 44:5, 49:6, 51:4, 51:22, 52:3, 52:25, 55:8
**HONORABLE** [1] - 1:2
**hoping** [1] - 39:9
**hot** [1] - 10:6
**hour** [1] - 11:20
**hours** [2] - 20:5, 24:6
**housed** [1] - 47:24
**hum** [1] - 11:11
**hunky** [1] - 11:12
**hunky-dory** [1] - 11:12

## I

**identification** [1] - 47:21
**identified** [4] - 44:24, 45:1, 45:16, 46:12
**iii** [2] - 28:17, 35:25
**illness** [2] - 24:11, 24:15
**imagine** [1] - 51:14
**important** [3] - 51:15, 52:4, 53:18
**impose** [3] - 32:9, 36:23, 43:9
**imposed** [5] - 30:18, 31:11, 31:18, 32:3, 33:4
**imprisonment** [6] - 30:24, 31:5, 31:14, 31:21, 32:25, 36:24
**incident** [1] - 45:13
**included** [1] - 36:25
**includes** [4] - 36:16, 37:21, 38:15, 38:22
**including** [3] - 5:7, 16:11, 43:19
**incorrectly** [1] - 16:22
**increase** [1] - 17:2
**increased** [1] - 17:5
**incriminating** [1] - 46:21
**independent** [1] - 50:13
**indicated** [2] - 52:7, 52:10
**indications** [1] - 4:17
**indicted** [1] - 48:2
**indictment** [14] - 26:24, 27:25, 28:11, 28:15, 28:21, 28:24, 29:18, 35:18, 36:6, 36:12, 47:1, 48:5, 48:8, 53:10
**indictments** [2] - 27:11, 27:13
**indirectly** [2] - 28:22, 48:11
**induce** [2] - 30:3, 30:5
**induced** [1] - 29:13
**ineffective** [1] - 38:19
**influence** [1] - 30:2
**information** [5] - 37:17, 37:19, 51:13, 51:19
**informed** [1] - 50:11
**inmate** [1] - 47:21
**inmates** [1] - 47:24
**innocence** [2] - 25:25, 26:1
**inside** [1] - 14:21,

45:24
**instead** [2] - 23:19, 25:16
**instituted** [1] - 30:7
**instructions** [1] - 14:2
**intend** [1] - 23:5
**intended** [1] - 48:12
**intending** [1] - 28:13
**intent** [2] - 29:16, 30:1
**interfere** [4] - 28:3, 28:10, 30:22, 35:20
**interference** [3] - 29:11, 30:23, 36:1
**interpret** [1] - 14:15
**interstate** [1] - 48:6
**interview** [2] - 42:3, 51:12
**interviewed** [1] - 45:25
**investigation** [3] - 37:18, 44:23, 51:10
**involved** [2] - 4:15, 48:6
**involvement** [1] - 46:22
**issue** [5] - 7:4, 12:22, 14:16, 53:14
**issues** [3] - 3:8, 41:14, 53:21
**items** [1] - 45:19

## J

**JA** [2] - 10:12, 10:17
**jail** [1] - 10:23
**Jamerson** [19] - 28:9, 44:24, 45:6, 45:9, 45:16, 45:25, 46:1, 46:3, 46:15, 46:20, 46:24, 46:25, 47:3, 47:6, 47:12, 47:15, 47:21, 47:22, 48:1
**Jamerson's** [2] - 47:5, 47:18
**January** [5] - 5:25, 6:12, 35:19, 36:7, 46:17
**JONES** [1] - 1:2
**Joshua** [8] - 2:5, 28:8, 45:1, 45:16, 46:17, 47:16, 47:21, 50:10
**JOSHUA** [1] - 1:7
**JR** [1] - 1:14
**judge** [1] - 32:16
**Judge** [5] - 7:23, 11:5, 13:19, 16:19, 18:12
**JUDGE** [1] - 1:2
**Judicial** [1] - 46:18
**jurors** [1] - 25:19
**jury** [7] - 6:15, 21:7,

25:16, 27:23, 33:18, 35:19, 36:7

## K

**keep** [1] - 16:15
**kind** [3] - 24:7, 24:12, 33:19
**knowing** [2] - 28:13, 50:12
**knowingly** [3] - 29:24, 35:16, 36:4
**known** [2] - 28:9, 30:6
**knows** [1] - 20:7

## L

**language** [3] - 14:7, 14:15, 23:3
**Las** [6] - 1:7, 1:15, 1:19, 44:22, 46:8, 46:19
**LAS** [1] - 2:1
**last** [11] - 3:14, 3:20, 4:5, 8:4, 11:1, 11:2, 11:8, 23:24, 24:6, 35:5, 43:14
**late** [1] - 16:19
**latter** [1] - 49:4
**law** [3] - 46:21, 53:8, 54:4
**Law** [1] - 1:18
**laws** [1] - 25:15
**least** [3] - 9:6, 49:4, 52:8
**leave** [1] - 20:20
**letter** [6] - 47:16, 47:19, 47:20, 47:22, 47:25, 49:2
**level** [16] - 15:4, 37:1, 37:2, 37:4, 40:21, 53:1, 53:2, 53:5, 53:7, 53:9, 53:11, 53:14, 53:16, 53:22, 53:25
**levels** [3] - 39:10, 40:22, 54:11
**liberty** [6] - 40:16, 42:13, 52:23, 55:2, 55:3
**lieu** [2] - 8:10, 9:3
**life** [2] - 3:9, 31:5
**likely** [1] - 30:7
**line** [1] - 7:12
**listed** [1] - 48:5
**located** [3] - 44:21, 45:14, 46:8
**lone** [1] - 46:7
**look** [6] - 13:5, 13:9, 33:3, 50:17, 50:18,

50:23
**looked** [1] - 13:7
**looking** [1] - 6:15
**loss** [1] - 38:7
**low** [2] - 38:3, 38:11
**lower** [3] - 42:18, 43:4, 55:4

## M

**Madam** [2] - 5:19, 21:11
**mail** [2] - 8:1, 20:12
**mailed** [2] - 7:23, 18:14
**main** [1] - 23:17
**male** [2] - 45:1, 46:7
**mandatorily** [1] - 31:7
**mandatory** [4] - 31:13, 36:22, 43:2, 43:3
**manner** [1] - 48:12
**March** [1] - 51:23
**Margaret** [2] - 1:22, 55:15
**marshals** [2] - 47:11, 47:14
**mask** [2] - 45:22, 46:12
**masks** [1] - 45:13
**math** [1] - 16:22
**matter** [2] - 6:15, 55:14
**matters** [1] - 5:7
**max** [1] - 42:8
**maximum** [7] - 30:17, 30:21, 31:2, 31:19, 36:23, 43:3, 50:3
**maximums** [2] - 31:18, 31:22
**mean** [4] - 15:3, 18:13, 23:24, 53:2
**means** [2] - 26:14, 50:6
**meant** [1] - 3:6
**medication** [1] - 24:20
**medicine** [1] - 24:7
**meetings** [1] - 5:7
**member** [2] - 28:12, 47:13
**mental** [2] - 24:11, 24:15
**mentioned** [1] - 12:9
**met** [1] - 47:18
**might** [1] - 51:14
**mind** [1] - 13:3
**minimum** [3] - 31:14, 31:24, 43:3
**minus** [1] - 53:16, 54:12
**minute** [4] - 4:22,

6

5:15, 5:17, 5:22
**minutes** [4] - 20:15, 21:4, 21:15, 21:21
**Miranda** [1] - 46:1
**mis** [1] - 15:2
**modus** [1] - 46:13
**moment** [1] - 27:2
**moments** [1] - 21:1
**money** [3] - 45:4, 45:23, 46:10
**months** [2] - 38:5, 54:13
**morning** [4] - 2:4, 2:6, 2:9, 16:18
**most** [1] - 42:15
**mouth** [1] - 16:15
**move** [3] - 36:13, 42:13, 52:14
**MR** [69] - 2:6, 2:9, 4:16, 7:23, 8:2, 8:21, 8:24, 9:2, 9:8, 9:15, 9:23, 10:7, 10:10, 10:16, 10:19, 10:22, 11:2, 11:4, 11:15, 12:1, 12:8, 12:12, 12:15, 12:17, 12:20, 12:23, 13:2, 13:6, 13:12, 13:18, 13:21, 14:8, 14:10, 14:19, 15:7, 15:15, 15:19, 15:21, 15:23, 16:3, 16:7, 16:9, 18:11, 18:18, 18:25, 19:3, 19:8, 19:10, 19:14, 22:20, 22:22, 23:7, 23:9, 23:15, 25:5, 34:22, 39:1, 39:5, 39:9, 44:2, 44:5, 51:4, 52:3, 52:9, 52:16, 52:25, 54:17, 54:20, 55:8
**MS** [15] - 5:1, 16:18, 17:3, 17:6, 17:8, 17:10, 17:14, 17:18, 17:24, 20:12, 20:24, 21:6, 25:4, 31:9, 35:15
**must** [7] - 4:20, 8:4, 22:16, 31:14, 32:15, 36:19, 37:24

### N

**name** [1] - 3:4
**namely** [1] - 44:4
**Naples** [1] - 44:21
**narcotic** [1] - 24:11
**nature** [1] - 39:21
**nearby** [1] - 47:3
**nearest** [1] - 5:19

**necessarily** [1] - 31:18
**necessitated** [1] - 5:20
**negotiations** [3] - 2:15, 34:20, 34:24
**NEVADA** [2] - 1:1, 2:1
**Nevada** [8] - 1:7, 1:15, 1:19, 1:23, 44:22, 46:9, 46:19
**never** [4] - 6:23, 21:11, 49:1, 49:2
**next** [1] - 6:10
**nobody** [1] - 34:3
**none** [1] - 3:11
**nonwaivable** [1] - 38:19
**notes** [1] - 48:2
**nothing** [2] - 54:18, 54:20
**notified** [2] - 21:8, 47:11
**number** [13] - 16:24, 23:13, 30:21, 34:12, 35:18, 36:6, 36:12, 38:6, 47:22, 48:5, 48:15, 50:2, 51:23
**numerous** [1] - 9:24, 46:25

### O

**o'clock** [1] - 19:15
**oath** [7] - 13:8, 22:12, 22:16, 27:3, 44:18, 49:12, 49:15
**object** [2] - 28:13, 51:19
**objection** [1] - 52:1
**obligated** [2] - 21:9, 41:14
**obligation** [2] - 35:8, 35:11
**observations** [1] - 25:7
**observed** [1] - 47:5
**obtain** [1] - 29:16
**obtained** [1] - 48:10
**obtains** [1] - 37:17
**obviously** [2] - 15:20, 52:5
**occasions** [1] - 34:12
**occupants** [1] - 45:15
**occur** [1] - 9:18
**occurred** [3] - 13:2, 13:12, 44:21
**OF** [4] - 1:1, 1:4, 1:11
**offense** [20] - 15:4, 28:4, 28:19, 29:12, 29:22, 33:11, 37:1, 37:2, 39:10, 40:21,

40:22, 50:14, 53:1, 53:2, 53:9, 53:11, 53:14, 53:16, 53:21, 53:25
**offenses** [4] - 26:23, 33:13, 33:14, 36:17
**offer** [2] - 4:14, 20:21
**offered** [2] - 4:7, 7:5
**offers** [1] - 34:20
**office** [3] - 13:25, 14:1, 45:8
**Office** [1] - 37:16
**officer** [5] - 19:1, 19:11, 51:11, 51:14, 51:19
**officers** [4] - 45:14, 45:19, 45:22, 48:2
**Official** [1] - 1:22, 55:16
**official** [2] - 30:3, 30:4
**often** [1] - 46:13
**old** [1] - 23:20
**once** [3] - 8:2, 24:17, 42:16
**one** [27] - 3:19, 3:25, 6:7, 14:25, 15:10, 15:16, 16:24, 17:3, 17:6, 18:15, 18:16, 18:18, 23:9, 29:16, 40:11, 41:4, 46:5, 48:6, 50:12, 52:20, 53:12, 53:21, 53:22, 53:23, 55:1
**ones** [1] - 31:18
**open** [1] - 45:3
**operandi** [1] - 46:13
**opportunity** [1] - 25:11
**oppose** [1] - 40:25
**oral** [5] - 10:4, 10:5, 12:19, 12:20, 34:20
**orally** [2] - 9:6, 9:21
**order** [7] - 8:18, 20:20, 22:11, 27:7, 33:10, 51:10, 52:1
**ordered** [2] - 7:17, 11:16
**original** [8] - 20:10, 21:3, 22:1, 22:2, 27:13, 33:1, 33:3, 33:6
**originally** [1] - 21:5
**otherwise** [2] - 20:18
**own** [1] - 25:7

### P

**p.m** [3] - 10:15, 16:8, 51:23
**packet** [1] - 43:23

**packs** [1] - 45:23
**Pahrump** [2] - 11:5, 11:7
**paid** [1] - 37:24
**pardon** [2] - 40:6, 42:24
**parole** [1] - 37:23
**part** [10] - 16:22, 29:13, 32:10, 34:1, 37:7, 48:12, 51:6, 53:18, 53:19, 53:20
**participant** [2] - 29:4, 29:6
**particular** [1] - 26:23
**parties** [3] - 14:16, 36:25, 54:23
**penalty** [3] - 30:21, 31:2, 31:19
**pending** [2] - 30:7, 46:25
**per** [2] - 6:9, 37:24
**perpetrator** [1] - 46:13
**personally** [2] - 5:11, 29:1
**pertains** [1] - 44:20
**PHILLIP** [1] - 1:14
**Phillip** [1] - 2:6
**phone** [6] - 8:6, 12:10, 13:13, 13:22, 47:11, 47:14
**photographs** [1] - 47:10
**physical** [2] - 29:25, 47:8
**pills** [1] - 24:7
**place** [1] - 41:17
**plaintiff** [1] - 1:5
**PLAINTIFF** [1] - 1:14
**plastic** [2] - 45:4, 45:23
**PLEA** [1] - 1:11
**plea** [62] - 2:12, 2:13, 2:14, 5:5, 5:12, 5:21, 7:2, 7:5, 11:23, 13:10, 21:10, 21:24, 22:12, 23:12, 23:17, 23:19, 25:12, 25:17, 26:18, 27:8, 33:16, 33:25, 34:6, 34:20, 36:11, 36:16, 36:18, 37:12, 37:20, 37:21, 38:5, 38:11, 38:15, 38:22, 39:25, 41:10, 42:22, 43:5, 43:23, 43:25, 44:8, 49:4, 49:9, 50:4, 50:5, 50:8, 50:11, 50:12, 50:14, 50:19, 50:24, 52:18, 52:22, 53:1, 53:18, 53:20, 54:1,

**packs** [1] - 45:23
54:16, 54:18, 54:20
**plead** [12] - 23:5, 25:3, 25:8, 33:23, 34:4, 35:9, 35:16, 36:5, 40:3, 49:6, 49:7, 49:19
**pleading** [5] - 17:11, 25:1, 30:12, 49:17, 49:22
**pleas** [1] - 34:24
**plus** [10] - 15:4, 53:11, 54:2, 54:4, 54:7, 54:9, 54:10
**podium** [1] - 22:10
**point** [4] - 5:6, 6:11, 15:16, 17:6
**pointed** [1] - 46:9
**possess** [1] - 33:19
**possibility** [1] - 50:3
**possible** [4] - 30:21, 31:2, 31:19, 52:5
**post** [1] - 45:25
**postmarked** [1] - 47:20
**postscript** [1] - 47:25
**presence** [1] - 26:7
**present** [6] - 2:10, 24:20, 26:10, 43:18, 46:23, 51:18
**presented** [1] - 51:17
**presentence** [7] - 42:5, 43:19, 50:7, 50:17, 50:23, 51:10, 52:13
**pressing** [2] - 7:4
**pressure** [1] - 34:3
**presumption** [1] - 25:25
**prevent** [1] - 30:2
**primarily** [1] - 8:12
**print** [2] - 20:13, 20:25
**prison** [11] - 8:10, 8:23, 9:5, 10:24, 18:6, 19:25, 20:2, 20:8, 24:18, 32:9, 32:17
**probation** [8] - 15:25, 40:14, 40:16, 40:20, 42:1, 42:12, 51:11, 53:23
**Probation** [3] - 17:20, 37:15, 54:24
**problem** [5] - 3:2, 3:5, 3:9, 3:10, 17:19, 17:24
**proceeding** [3] - 23:19, 30:3, 30:4
**proceedings** [2] - 47:5, 55:13
**proceeds** [1] - 48:10

7

**process** [1] - 41:17
**prohibited** [1] - 11:23
**promise** [2] - 35:8,
40:2
**proof** [1] - 25:24
**proper** [2] - 53:24,
54:25
**property** [4] - 29:14,
29:16, 36:10, 48:9
**prosecute** [1] - 43:17
**prove** [6] - 19:23,
25:25, 28:5, 29:23,
30:14, 49:16
**provided** [1] - 47:15
**providing** [1] - 46:20
**punishments** [1] -
50:4
**purpose** [2] - 2:12,
23:18, 50:25
**purposes** [1] - 25:9
**pursuant** [2] - 38:12,
45:21
**put** [3] - 13:8, 14:1,
45:4

## Q

**quarters** [1] - 11:7
**questions** [5] - 13:9,
22:12, 23:17, 41:22,
51:20
**quiet** [2] - 11:3, 11:14

## R

**raise** [3] - 8:11, 8:13,
22:13
**ran** [2] - 45:2, 46:8
**range** [7] - 16:2,
37:14, 38:2, 38:4,
38:11, 38:21
**rather** [1] - 19:20
**RDR** [2] - 1:22, 55:15
**read** [10] - 23:2, 27:10,
34:6, 43:25, 44:7,
44:17, 49:8, 50:7,
51:16, 54:6
**reading** [1] - 22:21
**ready** [3] - 13:10,
21:19, 44:14
**realized** [2] - 15:14,
15:15
**really** [1] - 52:18
**reason** [5] - 44:3,
49:23, 50:16, 50:21,
51:2
**reasonable** [3] - 26:2,
28:6, 36:23
**reasonably** [1] - 29:7
**receipt** [1] - 34:23

**receive** [3] - 19:20,
33:2, 37:3
**received** [4] - 18:5,
18:8, 18:10, 18:12
**recently** [1] - 4:8
**recess** [1] - 21:22
**recite** [5] - 39:10,
39:11, 52:17, 52:24,
53:19
**recited** [1] - 54:16
**reciting** [1] - 54:17
**recommendation** [2] -
38:9, 54:25
**recommendations** [1]
- 42:4
**recommended** [1] -
41:9
**recommending** [1] -
41:8
**record** [8] - 16:14,
21:7, 21:20, 23:1,
37:7, 39:4, 52:18,
55:13
**recover** [1] - 45:19
**recovered** [2] - 45:22,
47:19
**reduction** [4] - 37:2,
37:4, 37:5, 53:16
**Reform** [1] - 41:13
**refusal** [1] - 5:20
**regard** [2] - 31:25,
46:16
**regarding** [4] - 37:2,
37:21, 48:22, 53:24
**registers** [3] - 45:3,
45:4, 45:7
**regular** [1] - 11:6
**relate** [1] - 35:13
**related** [1] - 39:12
**relation** [3] - 28:23,
29:5, 31:3
**release** [6] - 32:10,
32:15, 32:21, 33:1,
33:5, 37:23
**relevant** [3] - 37:12,
43:15, 43:17
**reliance** [1] - 37:19
**rely** [2] - 37:16, 37:18
**remain** [4] - 26:14,
26:15, 27:2, 27:7
**remaining** [3] - 36:14,
52:5, 52:6
**remember** [1] - 9:13
**remind** [2] - 21:11,
51:24
**removal** [1] - 38:22
**removed** [1] - 47:13
**renegotiate** [1] - 4:6
**Reno** [1] - 1:23
**report** [10] - 42:5,

43:19, 50:7, 50:18,
50:19, 50:23, 51:11,
51:12, 51:14, 52:13
**reported** [1] - 47:7
**Reported** [1] - 1:22
**Reporter** [2] - 1:22,
55:16
**represent** [2] - 25:10,
25:13
**representation** [3] -
7:13, 10:4, 10:6
**representations** [1] -
25:7
**represented** [2] - 5:4,
21:9
**represents** [1] - 25:10
**request** [1] - 38:10
**required** [1] - 27:21
**respect** [3] - 2:20,
2:24, 49:4
**respects** [1] - 44:12
**responsibility** [3] -
37:3, 37:4, 38:8
**restitution** [1] - 33:10
**result** [4] - 16:22,
38:7, 47:1, 47:12
**returned** [2] - 35:18,
36:6
**revealed** [1] - 44:23
**review** [1] - 51:16
**reviewed** [1] - 43:25
**revised** [4] - 8:3,
17:23, 20:25, 21:2
**revision** [1] - 21:3
**revoked** [3] - 32:19,
32:25, 33:5
**rights** [5] - 26:19,
33:18, 36:17, 38:19,
43:11
**risk** [1] - 53:7
**robberies** [8] - 46:2,
46:3, 46:4, 46:7,
46:11, 46:15, 46:22,
48:7
**robbery** [11] - 28:3,
28:10, 29:7, 29:11,
30:22, 30:23, 35:21,
36:1, 44:20, 46:5,
46:6
**ROBERT** [1] - 1:2
**room** [1] - 11:20
**rules** [2] - 13:5, 50:18
**run** [2] - 20:25, 31:14

## S

**satisfied** [1] - 25:12
**scarves** [1] - 45:12
**schedule** [1] - 5:19
**scheduled** [1] - 4:25,

5:6, 52:12
**school** [1] - 23:22
**search** [2] - 45:21,
45:22
**searched** [1] - 45:20
**seated** [2] - 4:13, 47:3
**second** [8] - 6:2, 6:8,
14:4, 18:13, 28:12,
28:21, 29:15, 30:1
**section** [14] - 14:23,
15:1, 15:8, 17:3,
28:1, 28:2, 28:16,
29:20, 35:21, 36:2,
36:9, 37:22, 38:13,
44:8
**Section** [1] - 29:1
**sections** [3] - 28:17,
29:10, 35:25
**sedan** [1] - 45:10
**see** [14] - 3:13, 4:19,
4:25, 6:21, 10:20,
10:23, 11:4, 11:8,
11:11, 11:18, 11:19,
18:20, 21:23
**seek** [2] - 38:1, 38:12
**semiautomatic** [2] -
46:9, 48:14
**send** [2] - 10:2, 32:16
**sent** [7] - 8:2, 12:22,
17:9, 18:19, 20:11,
47:16, 47:19
**sentence** [22] - 31:8,
31:10, 31:15, 31:25,
32:10, 33:1, 36:21,
36:23, 37:7, 38:1,
38:3, 38:10, 38:20,
40:12, 41:5, 41:8,
42:18, 43:9, 43:11,
51:15, 55:4
**sentenced** [4] - 24:17,
32:8, 32:20, 42:11
**sentences** [2] - 30:18,
43:4
**Sentencing** [2] -
36:20, 41:13
**sentencing** [22] - 32:3,
32:6, 36:15, 37:9,
37:25, 38:2, 38:4,
39:16, 39:18, 41:13,
41:17, 41:18, 42:5,
43:19, 50:8, 50:24,
51:21, 51:22, 52:8,
52:9, 52:13, 53:24
**serial** [1] - 48:15
**serve** [1] - 33:18
**set** [9] - 6:12, 6:15,
35:17, 36:5, 36:11,
40:12, 42:17, 51:22,
55:4
**sets** [1] - 41:5

**settled** [1] - 13:23
**seven** [1] - 31:14
**several** [1] - 44:12
**short** [2] - 45:14, 54:6
**show** [1] - 2:19
**sign** [18] - 3:16, 3:23,
6:22, 6:24, 7:2, 7:14,
7:20, 12:24, 12:25,
18:9, 20:16, 20:20,
21:5, 21:20, 22:3,
50:16, 51:3, 51:8
**signature** [4] - 8:10,
8:25, 18:5, 34:17
**signed** [9] - 13:11,
17:19, 21:12, 22:3,
22:5, 34:15, 49:10,
51:4, 51:5
**signing** [1] - 3:9
**silent** [4] - 26:14,
26:15, 27:2, 27:7
**SILVA** [15] - 1:14,
16:18, 17:3, 17:6,
17:8, 17:10, 17:14,
17:18, 17:24, 20:12,
20:24, 21:6, 25:4,
31:9, 35:15
**Silva** [5] - 2:7, 4:17,
8:2, 35:6, 35:13
**silver** [4] - 44:25,
45:17, 46:9, 48:15
**simple** [1] - 11:24
**simply** [2] - 26:15,
54:16
**situation** [1] - 49:2
**slide** [1] - 48:15
**Smith** [1] - 2:7
**SMITH** [3] - 1:14, 2:6,
5:1
**smoothly** [1] - 52:5
**sometime** [1] - 8:4
**somewhat** [2] - 15:1,
15:9
**somewhere** [1] -
19:23
**sorry** [1] - 49:7
**South** [1] - 1:23
**speaking** [3] - 2:24,
9:16, 48:1
**special** [2] - 32:2,
37:24
**specific** [1] - 2:17
**specifically** [2] -
39:17, 48:1
**specified** [1] - 32:15
**spent** [3] - 11:20,
32:21, 32:25
**stack** [2] - 6:2, 6:8
**stand** [1] - 26:7
**start** [2] - 13:9, 41:17
**State** [1] - 46:18

**state** [4] - 29:17,
45:21, 46:24, 48:6
**statement** [2] - 48:17,
49:9
**statements** [2] -
46:15, 46:21
**STATES** [2] - 1:1, 1:4
**States** [12] - 1:15, 2:5,
2:8, 35:21, 35:24,
36:2, 36:9, 36:13,
36:20, 38:1, 38:13,
50:10
**status** [2] - 32:22,
52:2
**statute** [1] - 36:24
**step** [1] - 53:23
**still** [7] - 2:13, 18:9,
40:11, 41:9, 42:21,
43:5, 43:17
**stop** [1] - 2:24
**store** [4] - 44:25, 45:2,
45:5, 45:9
**stores** [2] - 46:8, 48:5
**Street** [1] - 1:23
**stuff** [2] - 48:24, 54:4
**stupid** [1] - 3:1
**subject** [2] - 31:13,
52:24
**substance** [3] - 17:10,
35:6, 35:14
**substantial** [1] - 53:7
**sufficient** [1] - 25:11
**suggesting** [2] - 18:1,
18:3
**summary** [4] - 38:25,
39:12, 39:24, 43:24
**summons** [1] - 21:8
**summonsed** [1] - 21:8
**sun** [1] - 20:5
**supervised** [6] -
32:10, 32:14, 32:20,
32:25, 33:5, 37:23
**support** [3] - 36:18,
43:24, 44:8
**supported** [1] - 50:12
**supposed** [3] - 2:18,
2:21, 7:20
**surveillance** [1] -
45:13
**suspect** [4] - 44:23,
45:1, 46:8, 46:10
**suspects** [1] - 45:12
**sworn** [2] - 22:13,
22:14
**SYJ44555** [1] - 48:15
**system** [1] - 32:6

## T

**table** [5] - 4:15, 4:18,

8:16, 20:19, 20:21
**tampering** [4] - 29:20,
31:20, 36:8, 53:11
**taped** [1] - 46:1
**Taurus** [1] - 48:14
**telephone** [1] - 12:7
**term** [9] - 30:24, 31:5,
31:21, 32:10, 32:20,
32:24, 33:3, 33:6,
36:23
**testify** [2] - 26:7, 26:14
**testimony** [2] - 30:2,
30:4
**Thanksgiving** [16] -
8:5, 8:7, 8:19, 8:20,
9:10, 9:12, 10:13,
10:14, 10:23, 10:25,
12:18, 14:11, 15:10,
15:12, 17:1, 18:6
**THE** [371] - 1:2, 1:14,
1:18, 2:4, 2:11, 2:14,
2:20, 2:21, 2:23,
2:25, 3:4, 3:5, 3:15,
3:17, 3:19, 3:22,
3:23, 3:25, 4:2, 4:3,
4:4, 4:5, 4:9, 4:10,
4:12, 4:19, 4:21,
4:22, 4:23, 4:24, 5:2,
5:3, 5:14, 5:15, 5:16,
5:17, 5:24, 6:1, 6:3,
6:4, 6:6, 6:7, 6:14,
6:17, 6:18, 6:19,
6:21, 7:6, 7:7, 7:9,
7:11, 7:12, 7:14,
7:15, 7:16, 7:17,
7:19, 7:21, 7:25, 8:1,
8:9, 8:14, 8:15, 8:22,
8:25, 9:3, 9:14, 9:21,
10:5, 10:8, 10:15,
10:17, 10:21, 11:1,
11:3, 11:13, 11:14,
11:22, 12:2, 12:4,
12:5, 12:11, 12:13,
12:16, 12:19, 12:21,
12:24, 12:25, 13:4,
13:7, 13:14, 13:15,
13:16, 13:19, 13:20,
14:6, 14:9, 14:14,
14:18, 15:5, 15:14,
15:17, 15:20, 15:22,
15:24, 16:5, 16:8,
16:10, 16:13, 16:14,
17:2, 17:5, 17:7,
17:9, 17:12, 17:16,
17:22, 17:25, 18:8,
18:14, 18:16, 18:17,
18:24, 19:1, 19:6,
19:9, 19:11, 19:15,
19:18, 19:21, 19:24,
20:1, 20:3, 20:4,

20:6, 20:9, 20:14,
20:17, 20:18, 20:22,
20:23, 21:2, 21:7,
21:14, 21:15, 21:17,
21:19, 21:23, 22:1,
22:2, 22:5, 22:6,
22:8, 22:9, 22:15,
22:17, 22:18, 22:21,
22:23, 22:25, 23:1,
23:4, 23:5, 23:8,
23:12, 23:16, 23:21,
23:22, 23:23, 23:25,
24:1, 24:2, 24:3,
24:4, 24:5, 24:6,
24:9, 24:10, 24:13,
24:14, 24:16, 24:19,
24:21, 24:22, 24:23,
24:24, 25:1, 25:2,
25:6, 25:14, 25:15,
25:18, 25:19, 25:22,
25:23, 26:4, 26:5,
26:9, 26:10, 26:12,
26:13, 26:17, 26:18,
26:21, 26:22, 26:25,
27:1, 27:5, 27:6,
27:9, 27:10, 27:12,
27:14, 27:15, 27:16,
27:18, 27:19, 27:20,
27:21, 30:11, 30:12,
30:16, 30:17, 30:19,
30:20, 31:1, 31:2,
31:6, 31:7, 31:10,
31:12, 31:13, 31:16,
31:17, 31:23, 31:24,
32:4, 32:5, 32:13,
32:14, 32:18, 32:19,
32:23, 32:24, 33:8,
33:9, 33:12, 33:13,
33:15, 33:16, 33:21,
33:22, 33:24, 33:25,
34:2, 34:3, 34:5,
34:6, 34:8, 34:9,
34:11, 34:12, 34:14,
34:15, 34:16, 34:17,
34:18, 34:19, 34:23,
35:1, 35:2, 35:4,
35:5, 35:12, 35:13,
38:24, 39:2, 39:7,
39:11, 39:14, 39:15,
39:16, 39:18, 39:20,
39:22, 39:23, 39:24,
40:1, 40:2, 40:5,
40:6, 40:7, 40:9,
40:13, 40:14, 40:19,
40:20, 40:24, 40:25,
41:2, 41:3, 41:6,
41:7, 41:11, 41:12,
41:20, 41:21, 41:23,
41:24, 42:8, 42:9,
42:10, 42:12, 42:15,
42:16, 42:20, 42:21,

42:23, 42:24, 42:25,
43:1, 43:7, 43:8,
43:13, 43:14, 43:22,
43:23, 44:3, 44:7,
44:10, 44:11, 44:13,
44:14, 44:16, 44:17,
48:18, 48:19, 48:20,
48:22, 48:23, 48:25,
49:1, 49:3, 49:6,
49:8, 49:11, 49:12,
49:13, 49:14, 49:18,
49:19, 49:21, 49:22,
49:24, 49:25, 51:1,
51:2, 51:6, 51:7,
51:8, 51:22, 51:24,
52:8, 52:12, 52:19,
54:15, 54:18, 54:22,
55:6, 55:7, 55:9
**therefore** [5] - 48:6,
50:14, 53:12, 53:13,
54:6
**thereof** [1] - 54:9
**third** [2] - 29:16, 30:6
**threat** [1] - 29:25
**threaten** [1] - 48:25
**threatened** [3] - 29:14,
33:22, 47:7
**threatening** [2] -
47:16, 53:12
**threatens** [1] - 47:23
**threats** [2] - 47:22,
48:22
**three** [9] - 11:7, 23:9,
29:12, 29:22, 29:23,
37:4, 53:17, 53:21,
54:12
**three-level** [1] - 37:4
**three-quarters** [1] -
11:7
**threw** [1] - 18:11
**thrown** [1] - 45:18
**Title** [10] - 28:1, 28:16,
29:9, 29:19, 35:21,
35:24, 36:2, 36:9,
37:22, 38:13
**today** [9] - 4:23, 6:22,
7:20, 21:8, 24:25,
25:13, 26:18, 27:6,
35:2
**together** [1] - 15:12
**tomorrow** [2] - 5:2,
5:3
**took** [5] - 7:12, 24:1,
24:4, 24:5, 45:7
**top** [1] - 54:13
**total** [1] - 33:1
**towed** [1] - 45:20
**town** [3] - 8:7, 8:20,
19:5
**trailed** [1] - 6:12

**TRANSCRIPT** [1] -
1:11
**transcript** [1] - 55:13
**treated** [1] - 24:10
**treatment** [2] - 24:14,
24:22
**trial** [28] - 3:10, 4:25,
5:7, 5:8, 5:13, 5:18,
5:19, 5:23, 5:24, 6:2,
6:15, 7:1, 7:4, 8:15,
8:17, 14:1, 20:18,
21:12, 23:19, 25:16,
25:19, 25:23, 26:16,
27:23, 28:6, 30:14,
36:16, 50:3
**tried** [1] - 4:20
**true** [12] - 14:19, 44:4,
44:6, 44:15, 44:18,
48:17, 48:19, 49:7,
49:10, 49:11, 49:13
**truth** [1] - 49:23
**truthfully** [1] - 22:16
**trying** [3] - 6:24,
14:14, 15:13
**Tuesday** [12] - 9:11,
9:12, 12:17, 13:13,
13:22, 13:23, 14:11,
18:6, 19:13, 19:14,
19:15
**turning** [1] - 19:19
**twenty** [1] - 23:21
**twenty-four** [1] - 23:21
**twice** [2] - 11:15,
11:17
**two** [18] - 2:16, 3:20,
4:10, 7:7, 14:24,
20:5, 24:4, 27:10,
37:3, 45:3, 46:4,
53:7, 53:16, 54:4,
54:7, 54:9, 54:10,
54:12
**two-level** [1] - 53:7
**twofold** [1] - 28:4
**typos** [1] - 8:3

## U

**U.S** [4] - 28:1, 37:15,
37:22, 41:13
**ultimately** [2] - 17:15,
17:18
**unanimously** [1] -
25:20
**uncharged** [1] - 37:13
**under** [19] - 13:4, 13:8,
22:12, 22:16, 25:15,
27:3, 30:21, 31:2,
31:19, 37:9, 37:11,
37:22, 41:13, 44:18,
49:12, 49:15, 50:18,

53:13, 54:1
**UNITED** [2] - 1:1, 1:4
**United** [12] - 1:15, 2:4,
2:7, 35:21, 35:24,
36:2, 36:9, 36:13,
36:20, 38:1, 38:13,
50:10
**unknown** [2] - 28:7,
28:10
**unless** [8] - 21:12,
21:16, 21:19, 37:4,
38:6, 50:19, 50:22,
52:1
**up** [8] - 15:11, 22:10,
27:6, 31:21, 36:23,
42:14, 43:1, 52:15
**upset** [1] - 47:6
**upstairs** [1] - 20:25
**urge** [1] - 51:13
**US** [3] - 28:16, 29:9,
29:19

**V**

**valid** [1] - 22:11
**valuable** [1] - 33:18
**Vegas** [6] - 1:7, 1:15,
1:19, 44:22, 46:8,
46:19
**VEGAS** [1] - 2:1
**vehicle** [3] - 45:18,
45:20, 45:24
**verbal** [1] - 19:19
**versus** [2] - 2:5, 50:10
**victim** [9] - 30:1, 30:2,
30:3, 30:5, 33:10,
45:3, 45:7, 45:11,
45:17
**victims** [2] - 29:13,
46:10
**video** [1] - 45:13
**violate** [1] - 32:16
**violation** [9] - 28:1,
28:16, 28:25, 29:19,
35:21, 35:24, 36:2,
36:8, 48:14
**violations** [2] - 29:9,
48:11
**violence** [9] - 28:18,
28:21, 28:23, 29:2,
29:4, 29:15, 31:4,
35:24, 47:8
**Virginia** [1] - 1:23
**visibly** [1] - 47:6
**voluntarily** [2] - 35:16,
36:4
**voluntary** [4] - 33:25,
50:4, 50:12, 51:6
**vote** [1] - 33:20
**vs** [1] - 1:6

**W**

**waited** [1] - 47:4
**waiting** [1] - 21:17
**waive** [2] - 22:21,
26:19
**waiver** [1] - 36:16
**waivers** [1] - 38:17
**waiving** [3] - 27:1,
38:18, 43:10
**wallet** [2] - 45:8, 45:17
**warrant** [2] - 45:21,
45:22
**Wednesday** [7] - 8:19,
9:1, 9:2, 9:4, 18:6,
19:13
**WEDNESDAY** [1] - 2:1
**week** [20] - 3:20, 4:25,
5:7, 5:8, 6:13, 6:14,
8:4, 8:5, 9:10, 9:12,
10:13, 10:14, 10:24,
11:1, 11:2, 11:8,
12:18, 14:11, 15:10,
17:1
**weeks** [4] - 2:16, 3:20,
4:10, 7:7
**white** [2] - 45:4, 45:22
**whole** [3] - 9:16,
32:20, 54:3
**willing** [7] - 3:23, 5:5,
20:10, 20:19, 22:3,
22:6, 27:6
**wipe** [1] - 11:6
**withdraw** [1] - 37:20
**withhold** [1] - 30:4
**witness** [4] - 29:21,
30:5, 31:20, 36:8
**witnesses** [2] - 26:5,
26:10
**words** [4] - 16:16,
25:24, 33:3, 50:22
**wore** [2] - 45:12, 46:11
**write** [1] - 23:2
**writing** [4] - 9:6,
16:11, 50:20, 50:22
**written** [4] - 34:20,
43:24, 49:9, 49:10
**wrongful** [1] - 29:14
**wrote** [1] - 49:1

**Y**

**year** [3] - 24:4, 24:5,
32:8
**years** [4] - 30:24,
31:14, 31:22, 32:11
**yesterday** [8] - 4:17,
7:19, 10:21, 11:11,
11:18, 16:4, 18:12,
18:19

**yourself** [2] - 12:6,
23:20